# ILLINOIS CENTRAL RAILROAD COMPANY *v.* BEHRENS, ADMINISTRATOR.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 241.  Argued March 6, 1914.—Decided April 27, 1914.

When a railroad is a highway for both interstate and intrastate commerce, and the two classes of traffic are interdependent in point of both movement and safety, Congress may, under the power committed to it by the commerce clause of the Constitution, regulate the liability of the carrier for injuries suffered by an employé engaged in general work pertaining to both classes of commerce, whether the particular service performed at the time, isolatedly considered, is in interstate or intrastate commerce. *Employers' Liability Cases*, 207 U. S. 463, distinguished.

Notwithstanding its wider powers, Congress, in enacting the Federal Employers' Liability Act of 1908, has confined the liability imposed by that act to injuries occurring to employés when the particular service in which they are employed at the time of injury is a part of interstate commerce. *Pedersen* v. *Del., Lac. & West. R. R. Co.*, 229 U. S. 146.

An employé of a carrier in interstate commerce by railroad who is engaged on a switch engine in moving several cars all loaded with intrastate freight from one point in a city to another point in the same city is not engaged in interstate commerce and an injury then sustained is not within the Employers' Liability Act of 1908.

The fact that an employé engaged in intrastate service expects, upon completion of that task, to engage in another which is a part of interstate commerce, is immaterial under the Employers' Liability Act of 1908 and will not bring the action under that act.

THE facts, which involve the construction of the Federal Employers' Liability Act of 1908 and the determination of whether an injured employé was engaged in interstate commerce at the time of the injury, are stated in the opinion.

*Mr. Blewett Lee*, with whom *Mr. Hunter C. Leake* and *Mr. Gustave Lemle* were on the brief, for the Illinois Central Railroad Company.

*Mr. Armand Romain* for Behrens, Administrator:

The railroad company contends that the status of the employé must be fixed by the nature of the work he was actually performing at the exact time of the accident, and that if said work consisted only in the hauling of cars of strictly local freight, the question certified should be answered in the negative.

The administrator, on the other hand, contends that the question certified must be answered in the affirmative, because:

The general nature of the employment, and not any specific, isolated item of work, must fix the status of an employé.

The actual work of hauling cars of local freight was not the only work the employé was doing, and was not the true and full measure of his employment at the time of his injury.

Even if there had been no cars at all attached to the engine, at the time of the injury, the mere fact that said switch engine was destined to Chalmette, where the switching engine and crew were to take up other cars, either loaded or empty, belonging to various railroad companies, and take them to a point in the same State, and there turn them over to the yardmaster, who was to deliver them to various railroad systems to be transported to points within and without the State, rendered the fatal trip of said engine a necessary step in the interstate traffic of the railroad company and constituted the engine itself an instrument of said traffic, without which such interstate commerce could not have been carried on.

To sustain the contention of the railroad company, it would be necessary, not only to place an extremely narrow construction on the Employers' Liability Act, but to over-

look some of the controlling facts of the case. On the first proposition this court has repeatedly expressed itself in no uncertain terms, while constructing this and similar statutes. On the second proposition, the lower court has found the facts and set them forth clearly in the certificate. Under both tests the contention of the company is untenable.

In support of contentions of defendant in error, see *Colasurdo v. Central R. R. Co.*, 180 Fed. Rep. 832; aff'd 192 Fed. Rep. 901; *Hanley v. Southern Ry. Co.*, 187 U. S. 620; *Ill. Cent. R. R. Co. v. Nelson*, 203 Fed. Rep. 956; *Johnson v. Southern Pacific Co.*, 196 U. S. 21; *Lamphere v. Railroad & Navigation Co.*, 196 Fed. Rep. 336; *Mich. Cent. R. R. Co. v. Vreeland*, 227 U. S. 65; *Mondou v. Railroad Co.*, 223 U. S. 51; *Pedersen v. Railroad Co.*, 229 U. S. 146; *Railway v. Conley*, 187 Fed. Rep. 951; *Railroad Co. v. Darr*, 204 Fed. Rep. 751; *Railway Co. v. Earnest*, 229 U. S. 114; *Railway Co. v. Seale*, 229 U. S. 156; *Schlemmer v. Railroad Co.*, 205 U. S. 10; *Railway Co. v. United States*, 231 U. S. 119; *Southern Railway v. United States*, 222 U. S. 27; *United States v. Great Northern R. R. Co.*, 145 Fed. Rep. 438; *United States v. Louis. & Nash. R. R. Co.*, 162 Fed. Rep. 185; *United States v. Railroad Co.*, 164 Fed. Rep. 347; *Same v. Same*, 154 Fed. Rep. 516; *Same v. Same*, 189 Fed. Rep. 964; 1 White, Personal Injuries on Railroads, p. 817; *Zikos v. Oregon Railroad Co.*, 179 Fed. Rep. 893.

By leave of the court, *Mr. Alfred L. Becker, Mr. Maurice C. Spratt* and *Mr. Lester F. Gilbert* filed a brief as *amici curiæ* in behalf of The New York Central & Hudson River Railroad Co.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

In an action in the Circuit Court for the Eastern District of Louisiana, under the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, against a railroad

company, by a personal representative to recover for the death of his intestate, the plaintiff prevailed, and the defendant took the case by writ of error to the Circuit Court of Appeals. That court, desiring instruction upon a question of law arising in the case, certified the question here under § 239 of the Judicial Code. The facts shown in the certificate are these: The intestate was in the service of the railroad company as a member of a crew attached to a switch engine operated exclusively within the city of New Orleans. He was the fireman, and came to his death, while at his post of duty, through a head-on collision. The general work of the crew consisted in moving cars from one point to another within the city over the company's tracks and other connecting tracks. Sometimes the cars were loaded, at other times empty, and at still other times some were loaded and others empty. When loaded the freight in them was at times destined from within to without the State or *vice versa*, at other times was moving only between points within the State, and at still other times was of both classes. When the cars were empty the purpose was usually to take them where they were to be loaded or away from where they had been unloaded. And oftentimes, following the movement of cars, loaded or empty, to a given point, other cars were gathered up and taken or started elsewhere. In short, the crew handled interstate and intrastate traffic indiscriminately, frequently moving both at once and at times turning directly from one to the other. At the time of the collision the crew was moving several cars loaded with freight which was wholly intrastate, and upon completing that movement was to have gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the State. The question of law upon which the Circuit Court of Appeals desires instruction is, whether upon these facts it can be said that the intestate at the time of his fatal injury was employed in

interstate commerce within the meaning of the Employers' Liability Act.

Considering the status of the railroad as a highway for both interstate and intrastate commerce, the interdependence of the two classes of traffic in point of movement and safety, the practical difficulty in separating or dividing the general work of the switching crew, and the nature and extent of the power confided to Congress by the commerce clause of the Constitution, we entertain no doubt that the liability of the carrier for injuries suffered by a member of the crew in the course of its general work was subject to regulation by Congress, whether the particular service being performed at the time of the injury, isolatedly considered, was in interstate or intrastate commerce. *Baltimore & Ohio Railroad Co.* v. *Interstate Commerce Commission,* 221 U. S. 612, 618; *Southern Railway Co.* v. *United States,* 222 U. S. 20, 26; *Mondou* v. *New York, New Haven & Hartford Railroad Co.,* 223 U. S. 1; *Interstate Commerce Commission* v. *Goodrich Transit Co.,* 224 U. S. 194, 213; *Minnesota Rate Cases,* 230 U. S. 352, 432. The decision in *Employers' Liability Cases,* 207 U. S. 463, is not to the contrary, for the act of June 11, 1906, c. 3073, 34 Stat. 232, there pronounced invalid, attempted to regulate the liability of every carrier in interstate commerce, whether by railroad or otherwise, for any injury to any employé, even though his employment had no connection whatever with interstate commerce.

Passing from the question of power to that of its exercise, we find that the controlling provision in the act of April 22, 1908, reads as follows: "Section 1. That every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, . . . for such injury or death resulting

in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." Giving to the words "suffering injury while he is employed by such carrier in such commerce" their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employé is engaged is a part of interstate commerce. The act was so construed in *Pedersen* v. *Delaware, Lackawanna & Western Railroad Co.,* 229 U. S. 146. It was there said (p. 150): "There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employé is employed by the carrier in such commerce." Again (p. 152): "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?" And a like view is shown in other cases. *Mondou* v. *New York, New Haven & Hartford Railroad Co., supra; Seaboard Air Line Railway* v. *Moore,* 228 U. S. 433; *St. Louis, San Francisco & Texas Railway Co.* v. *Seale,* 229 U. S. 156, 158; *North Carolina Railroad Co.* v. *Zachary,* 232 U. S. 248, 256; *Grand Trunk Western Railway Co.* v. *Lindsay, ante,* p. 42.

Here, at the time of the fatal injury the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury.

*The question is accordingly answered in the negative.*