## Keiser v. Philadelphia & Reading Railway Company.

*Workmen's compensation—Railroads—Interstate and intrastate commerce.*

Where a brakeman is injured while shifting a freight car, which is to be carried to another station by a local train, from which station it is to be loaded for an interstate shipment, the workman is engaged in interstate commerce and cannot recover compensation under the Pennsylvania act.

Appeal from decision of the Workmen's Compensation Board. C. P. Northumberland Co., Feb. T., 1921, No. 169.

R. L. Belford, for plaintiff; Voris Auten, for defendant.

MOSER, J., Dec. 12, 1921.—On Aug. 16, 1919, Willis F. Keiser was a brakeman on the defendant's local freight train running between West Milton, Penna., and Tamaqua, Penna. According to the testimony, it was the duty of the crew to load and unload freight, do switching, place or pick up cars as the occasion required, between the points above mentioned. The witness, James Hoffman, on page nine of the notes, says the crew "did switching, picking up, setting out, transferred freight, loaded and unloaded."

When the train reached Sunbury they were required, in the line of work of this crew, to move an empty box-car from Sunbury to Thompson's siding, about one and one-half miles south of Sunbury Station. This empty box-car was placed in front of the engine which was attached to the freight train and moved to the said siding. Upon reaching the siding it was discovered there was a "battleship" car standing thereon in such a position that the box-car could not be placed as desired. The train was left on the main track north of the switch and the empty box-car was placed on the same track south of the switch. The claimant, with other members of the crew, went into the siding with the engine for the purpose of bringing the battleship out so that it might be coupled to the empty box-car, and the box-car put into the siding to the rear of the battleship in the position desired for loading. In attempting to couple the engine to the battleship car, the claimant was injured. When the train left West Milton it was made up of twelve cars, two of which were loaded with freight being transported from Baltimore, Maryland, to points

1 D. & C.

in Pennsylvania. One of these cars was dropped at Winfield, Penna., so that at the time of the accident there was one car in the train loaded with interstate freight.

The Workmen's Compensation Board sustained the disallowance of the referee, who held as a legal conclusion that at the time of the accident claimant and defendant "were both engaged in one of the incidents of the interstate commerce," and that the claim must be disallowed and claimant's petition dismissed for want of jurisdiction. In the opinion filed the board held: "At the time of the claimant's injury he was engaged in placing a car on a siding near Sunbury. This car had been ordered from the defendant's agent at Sunbury by the Thompson Company, to be placed for loading for Toronto, Canada. This car was actually placed on the date of the accident and went forth to Toronto, Canada, on Aug. 21st. The train itself, upon which the employee was a brakeman, had been left upon the southbound main track while this switching was being done. There were interstate cars in this train. Under these circumstances, the work in which the claimant was engaged at the time of his accident was interstate. This case is ruled by New York Central R. R. Co. v. Carr, 238 U. S. 260." The claimant in this proceeding was seriously injured, and to him the case is of vital importance. We have devoted much time to a review of the cases cited by counsel on both sides, as well as many other cases which we thought might throw some light upon the questions raised by the pleadings. Counsel for the defendant contends that the appeal must be dismissed: "First. On the ground that the train, which could not proceed to destination until the local work was done, was an interstate train. Second. Preparatory movements in aid of interstate commerce are part of such commerce." As to the first proposition, the referee and board held that the Carr case was controlling, and found that the claimant was engaged in interstate commerce at the time of his injury.

We think the case at bar is distinguishable from the Carr case, where the cars that were being placed upon the siding were part of the interstate train, and, so far as the particular train was concerned, the cars were at the end of their journey. They were not to continue beyond this point as part of the train, so it became the duty of the members of the train crew to dispose of them in some way in order that the train might proceed to its destination. The case at bar resembles more the case of Murray v. Pittsburgh C. C. & St. Louis Ry. Co., 263 Pa. 398, where plaintiff's contention that he was engaged in interstate commerce was based on proof submitted to the effect that three of the cars included in the train contained material from points without the State. In the opinion, the Supreme Court say: "The crew was occupied with the purely local act of shifting cars from one part of the yard to another as the owner might require in accordance with the customary duties it performed daily in the various yards along the road. The switching operation was not shown to be incidental to, or made for the purpose of, delivering interstate freight, nor was the crew at the time engaged mainly in the operation of an interstate train. Its primary duties were intrastate, and became interstate only as it was from time to time engaged in a delivery of through freight from other states, . . . for convenience the engine remained attached to the cars composing the train, which circumstances, in our opinion, neither in fact nor in law changed his employment."

Under this decision, we would not hold in the case at bar that, simply because there was a car in the train loaded with freight consigned from without the State, the claimant was engaged in interstate commerce when the injury was sustained. A more serious question confronting the claimant in

his endeavor to recover is the character of service for which the car he and his fellows were endeavoring to place at the time of the injury had been selected by those in authority. Mr. Buck, who was then the station agent at Sunbury, in his testimony says: "On the morning of Aug. 18th we received an order by telephone from Mr. Thompson from his plant, asking us to place a car for them to load with foundry facings for Toronto, Canada. We applied the car in question."

The referee found as a fact: "That empty box-car C. N. O. & T. P., No. 17019, which claimant's crew had picked up at Sunbury and placed in front of its engine, had been ordered by telephone that morning from the defendant's station agent at Sunbury, Pa., for loading by Thompson's company with foundry facings at Thompson's siding, to be shipped to Toronto, Canada; that, after the accident, the crew, of which claimant was a member, took this car, together with its train and the claimant, back to Sunbury, where box-car C. N. O. & T. P., No. 17019, was left on the siding, and that it was later that day placed at the Thompson siding, loaded with foundry facings for Toronto, Canada, and taken out on Aug. 21, 1919, subsequent to the accident." In the opinion filed, the board finds: "This car had been ordered from the defendant's agent at Sunbury by the Thompson Company, to be placed for loading for Toronto, Canada. This car was actually placed on the date of the accident and went forth to Toronto, Canada, on Aug. 21st." These findings, thus adopted by the board, are final and conclusive: Messinger v. Lehigh Valley R. R. Co., 261 Pa. 336.

The car having been selected for an interstate shipment, its removal from the Sunbury yards to the Thompson siding was a step in that direction, and this case comes squarely within the ruling in Christy v. Wabash R. Co., 191 S. W. Repr. 241, where the court says: "In this case deceased was engaged in switching a car to a place in defendant's yards, where, it is true, it was to be placed in a local train and taken to a station a dozen miles away, but for the purpose of being loaded that day with an interstate shipment. No sound reason can be suggested why that was not interstate service. We think it was such service in a special and immediate sense. For the use to which the car was to be put was the already ascertained service of a specific shipment into another state; and that shipment was to be made on the day the car was being switched out of the yards for that use. The fact that it was taken out of the yards at Moberly, a few miles away, would not be different in effect from taking it from the yards at Sturgeon." The fact that the car was not started on its way to Toronto until Aug. 21st has no bearing upon the application of the legal principles here involved whatever. Nor can the argument that the work in hand at the immediate time of the accident was the removal of the "battleship" car from the siding avail the claimant in the light of the rule adopted in Louisville & Nashville R. R. Co. v. Parker, 242 U. S. 13, where the Supreme Court say: "The business upon which the deceased was engaged at the moment was transferring an empty car from one switch track to another. This car was not moving in interstate commerce, and the fact was treated as conclusive by the Court of Appeals. In this the court was in error, for if, as there was strong evidence to show and as the court seemed to assume, this movement was simply for the purpose of reaching and moving an interstate car, the purpose would control and the business would be interstate. The difference is marked between a mere expectation that the act done would be followed by other work of a different character as in Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, and doing the act for the purpose of furthering the latter work."

1 D. & C.

Keiser v. Philadelphia & Reading Railway Company.

As we stated above, the claimant was seriously injured and suffered a permanent partial disability that will inconvenience him or probably affect his earning power during the remainder of his life. We regret that he cannot legally recover compensation for his injury, but, after a most deliberate consideration of all questions raised, it is our firm opinion that under the decisions he cannot recover in this action.

The appeal is accordingly hereby dismissed, with an exception noted for the claimant.

From C. M. Clement, Sunbury, Pa.