Mississippi Cent R. Co. *v.* Knight.*

(Division A.   March 30, 1925.)

[103 So. 377.   No. 24615.]

1. Commerce. *Employee on intrastate train, injured after discharge of interstate shipments, not engaged in "interstate commerce."*
Engineer of an intrastate train, injured on way to roundhouse after end of trip, was not engaged in interstate commerce at time of injury, within federal Employers' Liability Act (U. S. Comp. St., Sections 8657-8665), all interstate shipments having, so far as appears, been delivered before the train reached destination.

2. Master and Servant. *Instruction as to injury from running of train being prima-facie evidence of negligence held proper, whether or not evidence of circumstances be conflicting.*

Whether or not the evidence of the circumstances attending the injury of a railroad employee in the running of a train be conflicting, it is proper, in action therefor, to instruct, in accordance with the statute, that, in all actions against a railroad company, proof of injury inflicted by running of locomotive or cars is *prima-facie* evidence of negligence of the company in reference to the injury.

---

*Headnotes 1. Commerce, 12 C. J., Section 55; 2. Master and Servant, 26 Cyc., p. 1495. As to when employees are deemed to be engaged in interstate commerce within the federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.) 52; L. R. A. 1915C, 56; On what employees are engaged in interstate commerce within federal Employers' Liability Act, see notes in 10 A. L. R. 1191; 14 A. L. R. 732; 24 A. L. R. 635, 29 A. L. R. 1207; 18 R. C. L., pp, 850-856; 3 R. C. L. Supp. 861 et seq., 4 R. C. L. Supp., p. 1216 et seq., 5 R. C. L. Supp., p. 1007 et seq.

Appeal from circuit court of Jefferson Davis county. Hon. J. Q. Langston, Judge.

Action by Ernest Knight against the Mississippi Central Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Brady & Dean,* for appellant.

The errors of the trial court, as assigned by appellant, are all so closely connected with the error committed by the trial court in holding that the cause of action asserted by Knight was not controlled by the Employers' Liability Act that the argument upon that error will, with only occasional distinctions which will be pointed out, include the other errors, and we shall proceed in this brief according to that plan.

There can be no question that appellant itself at the time of this injury, without reference to passenger train No. 2, was engaged in interstate commerce. It daily operated trains in interstate commerce, between Natchez, Mississippi, and Mobile, Alabama, and at every junction

point exchanged interstate traffic. The very train which passenger train No. 2 followed into the yard and with one section of which it collided, was en route to Mobile.

By the character of passenger train No. 2, without reference to its other operations, it was at such time engaged in interstate commerce. Passenger train No. 2 had come out of Natchez, carrying interstate express shipments—three going from Natchez, Mississippi, to New Orleans, Louisiana, and one from Wisner, Louisiana, through Mississippi, into Kentwood, Louisiana. It carried a United States mail car and messenger, with mail in pouches put on at Natchez, at Roxie, at Brook-haven, and at Wanilla, such points being, as already indicated, regular junction points for interstate traffic.

Since it is well established that when a commodity has been delivered to a common carrier for continuous transportation to a point in another state, interstate commerce then begins and continues throughout until the freight reaches the point where the parties intended that the movement should finally end, such carriers, by accepting any freight for shipment to or from another state, or by participating to any extent in the movement thereof, are thereby engaged in interstate commerce, within the purview of the federal act, notwithstanding their operation may be confined within the limits of a single city, county or state. This is true though the shipment is made by the carrier without any common control, management or arrangement with another carrier for a continuous carriage or shipment.

1 Roberts "Federal Liabilities of Carriers," 743, citing: *United States, ex rel. Attorney General* v. *Union Stockyards & Transit Co. of Chicago*, 192 Fed. 330; *St. Joseph Stockyards Co.* v. *United States*, 110 C. C. A. 432, 187 Fed. 104; *United States* v. *Illinois Terminal R. Co.*, 168 Fed. 546; *Belt R. Co. of Chicago* v. *United States*, 93 C. C. A. 666, 168 Fed. 542, 22 L. R. A. (N. S.) 582; *United States* v. *Standard Oil Co. of Indiana*, 155 Fed. 305; *United States* v. *Chicago Great Western Ry. Co.*,

162 Fed. 775; *United States* v. *Northern Pac. Terminal R. Co.,* 144 Fed. 861; *Western Ry. of Alabama* v. *Mays,* 72 So. 641; *Devine* v. *Chicago & C. River R. Co.,* 257 Ill. 449, 102 N. E. 803; *Ross* v. *Sheldon,* 176 Iowa, 618, 154 N. W. 499; *Louisiana Ry. & Nav. Co.* v. *Holly,* 127 La. 615, 53 So. 882; *Morrison* v. *Commercial Towboat Co.,* 116 N. E. 499; *Gaines* v. *Detroit, G. H. & M. R. Co.,* 181 Mich. 376, 148 N. W. 397; *Trowbridge* v. *Kansas City & W. B. Ry.,* 192 Mo. App. 52, 179 S. W. 777; *Gulf, C. & S. F. Ry. Co.* v. *Mathis,* 194 S. W. 1135; *Anset* v. *Columbia & P. S. R. Co.,* 89 Wash. 609, 154 Pac. 1100; *Findley* v. *Coal & Coke Co.,* 76 W. Va. 747, 87 S. E. 198.

It is hard to understand how an argument could be made in good faith that appellee himself was not at the time of the injury engaged in interstate commerce. If we consider the matter of the express shipments only, then it must be admitted that between Natchez and Brookhaven at the time when train No. 2 had upon it American Railway Express Company interstate shipments, Knight was engaged in interstate commerce. Since said train No. 2 did not lose its character as an interstate carrier after it left Brookhaven, it must also be admitted that appellee was thereafter engaged in interstate commerce to some fixed point, and since the journey of the train and the duties of the engineer did not end until the engine had reached the round-house in Hattiesburg, and had there been delivered to the hostler, it must then follow that the roundhouse was such fixed point.

As a matter of fact, both he and every other member of the train crew were then and there employed in interstate commerce. *North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, 58 L. Ed. 591; *Southern R. R. Co.* v. *Gadd,* 233 U. S. 572, 58 L. Ed. 1099; *Norfolk Southern R. R. Co.* v. *Ferebee,* 238 U. S. 269, 59 L. Ed. 1303; *New York Central & Hudson River R. R. Co.* v. *Carr,* 238 U. S. 260, 59 L. Ed. 1298; *Central Vermont R. R. Co.* v. *White,* 238 U. S. 507, 59 L. Ed. 1433; *Great Northern Railway Co.* v. *Otos,* 239 U. S. 349, 60 L. Ed. 322; *Southern R. R.*

*Co.* v. *Lloyd,* 239 U. S. 496, 60 L. Ed. 402; *Chicago, Rock Island & Pacific R. R. Co.* v. *Wright,* 239 U. S. 548, 60 L. Ed. 431; *Erie R. R. Co.* v. *Collins,* 253 U. S. 84, 64 L. Ed. 794; *Philadelphia, Baltimore & Washington R. R. Co.* v. *Smith,* 250 U. S. 101, 63 L. Ed. 869.

The United States supreme court has in several leading cases laid down the test of what constitutes employment in interstate commerce and these principles have been illustrated numerous times in other cases decided by that august tribunal. *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.,* 239 U. S. 556, 60 L. Ed. 436; *Pederson* v. *Delaware, Lackawanna & Western R. R. Co.,* 229 U. S. 146, 57 L. Ed. 1125. See also: *Kinzell* v. *Chicago, Milwaukee & St. Paul R. R. Co.,* 250 U. S. 130, 63 L. Ed. 893; *Southern Pacific Co.* v. *Industrial Accident Commission,* 251 U. S. 259, 64 L. Ed. 258; *Erie R. R. Co.* v. *Collins,* 253 U. S. 77, 64 L. Ed. 790; *Philadelphia & Reading R. R. Co.* v. *Polk,* 256 U. S. 332, 65 L. Ed. 958; *Industrial Accident Commission* v. *Davis,* 259 U. S. 182, 66 L. Ed. 888.

Applying these tests to appellee's status, there is no escape from the conclusion that his work was not independent of the interstate commerce in which the defendant was engaged and its performance was not a matter of indifference so far as that commerce was concerned, but the performance of it was in the nature of a duty resting upon the carrier and was so closely connected with interstate commerce as to be a part of it. His connection therewith was at all times as close as, and in some instances closer than, the connection therewith of the employees in the following cases, in every one of which liability and recovery was wholly controlled by the Federal Employers' Liability Act. *Norfolk & Western R. R. Co.* v. *Earnest,* 229 U. S. 114, 57 L. Ed. 1096; *St. Louis, San Francisco & Texas R. R. Co.* v. *Seale,* 229 U. S. 156, 57 L. Ed. 1129; *North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, 58 L. Ed. 591; *New York Central & Hudson River R. R. Co.* v. *Carr,* 238 U.

S. 260, 59 L. Ed. 1298; *Great Northern R. R. Co.* v. *Otos,* 239 U. S. 349, 60 L. Ed. 322.; *Southern R. R. Co.* v. *Lloyd,* 239 U. S. 496, 60 L. Ed. 402; *Chicago, Rock Island &* · *Pacific R. R. Co.* v. *Wright,* 239 U. S. 548, 60 L. Ed.. 431; *Kanawha & Michigan R. R. Co.* v. *Kerse,* 239 U. S. 576, 60 L. Ed. 448.; *Illinois Central R. R. Co.* v.. *Skaggs,* 240 U. S. 66, 60 L. Ed. 528; *Philadelphia & Reading R. R. Co.* v. *Hancock,* 253 U. S. 284, 64 L. Ed. 907; *Erie R. R. Co* v. *Szary,* 253 U. S. 86, 64 L. Ed. 794; *Philadelphia & Reading R. R. Co.* v. *Didonato,* 256 U. S. 327, 65 L. Ed. 955; *Chesapeake & Ohio R. R. Co.* v. *Kornhoff,* 166 Ky. 353, 180 S. W. 523.; *Chesapeake & Ohio R. R. Co.* v. *Shaw,* 182 S. W. 653. For further cases in point see 10· A. L. R. 1216, 14 A. L. R. 732, 24 A. L. R. 617, 634, 29 A. L. R. 1207.

Having started upon a journey in the conduct of interstate commerce, appellant in this case was an employee in interstate commerce until the journey was completed.

As shown by the testimony of his conductor, of his superintendent and as admitted by him in testimony, his journey did not end until he had reached the roundhouse and turned his engine over to the hostler. Any injury sustained by him, therefore, prior to the delivery of the engine is an "injury suffered while he was employed by such carrier in such commerce." *Seaboard Air Line Railway Company* v. *Padgett,* 236 U. S. 668, 59 L. Ed. 777; *Erie Railroad Company* v. *Winfield,* 244 U. S. 170, 61 L. Ed. 1057.; *Easter* v. *Virginian R. R. Co.,* 76 W. V. 383, 11 N. C. C. A. 101, 86 S. E. 37; *Czary case,* 253 U. S. 86, 64 L. Ed. 794.

The most that appellee could claim for himself under the circumstances shown by this record was that he was engaged in intrastate commerce as well as interstate commerce, and, therefore, that he has the right of choice of remedy between the state and federal laws. Such a contention, however, has already been decided against him by the supreme court of the United States in the following cases, in addition to others above cited: *Michi-*

*gan Central R. R. Co.* v. *Vreeland,* 227 U. S. 59, 57 L. Ed.
417; *Pederson* v. *Delaware, Lackawanna & Western R.
R. Co.,* 229 U. S. 146, 57 L. Ed. 1125; *New York Central
& Hudson River R. R. Co.* v. *Carr,* 238 U. S. 260, 59 L.
Ed. 1298; *New Orleans, Mobile & Chicago R. R. Co.* v.
*Jones,* 62 So. 681.

## II.

The court granted to appellee the instruction quoted
in the statement of facts embodying the *prima-facie* stat-
ute of the state of Mississippi and charging the jury
that proof of injury inflicted by the running of the en-
gine, locomotives and cars of appellant was *prima-facie*
evidence of the want of reasonable skill and care of the
railroad corporation in reference to such injury.

The applicability of the Mississippi statute in actions
controlled by the federal Employer's Liability Act first
went before the supreme court of the United States in
the case of *New Orleans & Northeastern R. R. Co.* v.
*Harris,* 247 U. S. 367, 62 L. Ed. 1167.

In *Yazoo & Miss. Valley R. R. Co.* v. *Mullins,* 249 U.
S. 531, 63 L. Ed. 754, the supreme court again passed on
the same statute, which in this particular instance had
not been invoked by the trial court, but was applied by
this court. The contention was made before the supreme
court of the United States that since the jury were not
instructed with reference to the *prima-facie* statute that
the rights of the railroad company had not been preju-
diced. That court promptly held such contention unsound
and reversed the case. See also *New Orleans & North-
eastern R. R. Co.* v. *Hanna,* 78 So. 953; *Alabama Great
Southern R. R. Co.* v. *Daniell,* 108 Miss. 358, 66 So. 730;
*Hines* v. *McCullers,* 83 So. 734; *Davis* v. *Elzey,* 88 So.
630; *Davis* v. *Temple,* 91 So. 689.

*E. L. Dent* and *J. W. Cassedy,* for appellee.

We do not understand the evidence to mean any more
than that the engine on which appellee was injured and

the cars attached thereto might be and were sometimes used in interstate commerce. Not that they were so used at the time of the collision and resulting injury. On the contrary, the evidence shows that on the last trip before the injury the train had been run from Natchez to Hattiesburg, both places within the state of Mississippi, and that this particular train never left the state of Mississippi.

It is shown by the evidence that the work appellee was doing at the time of his injuries was independent of the interstate commerce in which appellant was engaged, and was not so closely connected with such commerce as to be a part of it. The work was a matter of indifference so far as interstate commerce was concerned. Tested by the rule announced by the supreme court of the United States in the cases cited by counsel for appellant in their brief, if those cases have an application to the facts in the case at bar, appellee was not engaged in interstate commerce at the time and place where he received his injuries. *N. C. R. R. Co.* v. *Zachary,* 232 U. S. 248.

In our judgment the case at bar is distinguished from other cases cited by certain controlling facts which the court was not even called on to consider much less decide. In all those cases the injured employee was actually engaged in the transportation of interstate commerce, or was working with and on instrumentalities so closely connected therewith as to be a part thereof. The employee was either (a) trainman, engineer, brakeman, conductor, etc. making up an interstate train, getting ready to work on an interstate train, riding on an interstate train or engine, or doing some manner or kind of work in transporting with the engines and cars commerce from one state into another and other states; or (b) when such employee's work or services was in or about the maintenance or repair of agencies, instrumentalities, already devoted to or immediately capable of facilitating some essential feature of interstate commerce. These two divisions might be classified into the transportation department, and the maintenance department. The first

department consists in locomotives, engines, cars and men, while the second department consists of tracks, bridges, pumps, towers, etc., and men. We find all the cases agree that to come within the federal act the injured employee at the time of the injury must be "engaged in interstate transportation or in work so closely related to it as to be practically a part of it." The burden of proof was on appellant to show that the appellee was engaged in interstate commerce. 1 Roberts, Injuries to Interstate Employees, sections 466, 808.

We shall now undertake to show that the true test of the character of the employment is the nature of the work being done at the time of the injury. *Illinois Central R, R. Co.* v. *Behrens,* 233 U. S. 473, 34 S. Ct. 646; *Chicago, B. & O. R. R. Co.* v. *Harrington,* 241 U. S. 177; *Erie Railroad Co.* v. *Welsh,* 242 U. S. 303, 61 L. Ed. 319.

We have given what the supreme court of the United States had to say with reference to whether the federal act applies in the case at bar. We shall now proceed to give a few illustrations from the supreme courts of some of the states. *Southern R. R. Co.* v. *Murphy,* 9 Ga. App. 190, 70 S. E. 972; *Missouri, K. & T. R. Co.* v. *Hawley* (Tex.), 123 S. W. 726; *Wright* v. *Chicago, R. I. & P. R. R. Co.* (Neb.), 143 N. W. 220; *Louisville & N. R. R. Co.* v. *Strange, Admx.,* 156 Ky. 439, 161 S. W. 239; *Gray* v. *Chicago N. R. Co.,* 153 Wis. 636, 142 N. W. 505; *Myers, Admx.,* v. *C. & C. R. R. Co.,* 259 S. W. 1027; *Martin* v. *St. L. & S. F. R. R. Co.,* 258 S. W. 1023; *Shanks* v. *R. R. Co.,* 239 U. S. 556.

Measured by the test as laid down by the supreme court of the United States, the facts in the case at bar do not bring it within the federal Employers' Liability Act, for the reason at the time appellee was injured he was not then engaged in interstate commerce within the contemplation and meaning of the federal act.

## II.

Appellant in concluding its brief assigns as error the giving of the instruction relative to the proof of injury

being *prima-facie* evidence of negligence and makes the statement in the conclusion of his brief of that: "This court has repeatedly held that the *prima-facie* statute applied only where the facts and circumstances of the injury inflicted by the running of cars are not shown, and that where the attendant facts are shown, then by those facts and circumstances alone must the issues be determined and not on any presumption of negligence."

Answering this contention we submit to the court the granting of this instruction in the form given by the court was not reversible error. First: The testimony in this case for the appellee was that as he was taking his engine to the roundhouse and as he undertook to pass the switch track on which the cars were standing or moving and which wrecked his train, that the cars on this switch were in the clear so that his engine could safely pass by, and the front part of his engine, being the widest part of his engine, did as a matter of fact pass by said cars, indicating that they were in the clear, but while his engine was passing said cars and when the cab of the engine had reached a point opposite the switch track these cars rolled into and collided with the cab of his engine. There was no testimony on the part of appellant undertaking to explain or account for the actual movement of the cars and there was no testimony for the appellee contradicting such explanation.

Second: The court will note the instruction in this case does not say at any place that the burden of proof ever shifts to the defendant, nor does the instruction in this case ever charge that there is any duty on the appellant to overcome any presumption. In fact this instruction does not state that any presumption ever arises in favor of the appellee, nor does it state that the appellant should be required to overcome such presumption by a clear preponderance of the evidence. In all the cases cited by counsel all these things were added to the instruction granted and it was this part of the instruction condemned by the court in each of the above cases

The instruction in this case is an exact copy of the statute and the case itself is a case falling within the exact terms of the statute and a rescript of the instruction was approved by this court and the United States supreme court in the case of *Easterling Lumber Co.* v. *S. W. Pierce,* 106 Miss. 672.

Argued orally by *T. Brady, Jr.,* for appellant, and *E. L. Dent* and *J. W. Cassedy,* for appellee.

Cook, J., delivered the opinion of the court.

The appellee, Ernest Knight, filed this suit in the circuit court of Jefferson Davis county, Miss., against the Mississippi Central Railroad Company, seeking to recover damages on account of personal injuries alleged to have been sustained by him on account of the negligent operation of the locomotives and cars of the defendant company. The defendant pleaded the general issue, and gave three separate notices of special affirmative matter under its plea of general issue, one of which was that the defendant was engaged in interstate commerce, and that plaintiff assumed the risk of such a collision as he claimed caused his injuries. Upon the proof offered the court below held that the statutes of the state of Mississippi alone controlled the cause of action, and not the federal Employers' Liability Act of April 22, 1908 (35 Stat. 65, c. 149; U. S. Comp. Stat. Supp. 1909, p. 1171), as amended April 5, 1910 (36 Stat. 291, c. 143; U. S. Comp. St., sections 1010, 8662, 8665), and denied to appellant the defense of assumption of risk permitted by the said Employers' Liability Act (U. S. Comp. St., sections 8657-8665), and allowed to appellee the benefit of the *prima-facie* statute of the state of Mississippi, which, under the Employers' Liability Act, is not applicable. There was a verdict and judgment for the plaintiff for the sum of ten thousand dollars from which this appeal was prosecuted.

It is conceded by counsel for the appellee that if the appellant, Railroad Company, and the appellee, as its employee, were engaged in interstate commerce at the time of the collision and resulting injury, the cause of action was controlled by the Employers' Liability Act, and the cause must be reversed. We shall, therefore, set out somewhat in detail the facts bearing upon this point.

The appellant, the Mississippi Central Railroad Company, is a common carrier by railroad engaged in commerce between the several states, and owns and operates a line of railroad between Natchez, Miss., and Hattiesburg, Miss. By a traffic arrangement with other railroads it operated one freight train from Natchez, through Hattiesburg, to Mobile, Ala., while all of its other trains were operated only over its own line of road, which is wholly intrastate. The appellee was an engineer in appellant's employment, and engaged in the passenger service. On the occasion when he was injured, the appellee was the engineer on passenger train No. 2 which left Natchez, Miss., for Hattiesburg, Miss., with a United States mail car and clerk, one American Railway Express car, and certain passenger coaches. After this train reached the passenger depot in the city of Hattiesburg, and had been entirely unloaded, the appellee was proceeding with his locomotive through the railroad yards to the roundhouse, the journey's end, and while so doing he was injured by a collision with the caboose of another train which either rolled from a side track into his engine, or was standing on another track in such a position that it did not clear the track along which appellee's engine was traveling.

On the day the appellee was injured the proof establishes the fact that there was handled on passenger train No. 2, on which appellee was engineer, three interstate express shipments from Natchez, Miss., to Brookhaven, Miss., which is about one-half the distance from Natchez to Hattiesburg. These three shipments were all delivered to the express company at Brookhaven to be for-

March, 1925]   Miss. Cent. R. Co. v. Knight.          633

138 Miss.]                    Opinion of the Court.

warded over the Illinois Central Railroad to points in the state of Louisiana, and the interstate character of the train from Natchez to Brookhaven is conceded. There is no testimony whatever that the train carried any interstate shipment after leaving Brookhaven for Hattiesburg.

The testimony shows that the appellant has traffic connections at Natchez, Miss., and that it there customarily receives United States mail out of Louisiana across the Mississippi river, but there was no testimony that any mail was there placed on train No. 2 on this particular date; that at Roxie, Miss., the appellant's tracks cross the tracks of the Yazoo & Mississippi Valley Railroad Company, which operates a line of railroad from New Orleans, La., to Memphis, Tenn., and at Brookhaven, Miss., its tracks cross the tracks of the Illinois Central Railroad Company, which operates a line of railroad between New Orleans, La., and Chicago, Ill.; that at each of these junction points the train in question usually received United States mail pouches, but there is no testimony that this particular train received any mail whatever at either place. The testimony further shows that at Wanilla, Miss., appellant's tracks cross the tracks of the New Orleans Great Northern Railroad Company, which operates a line of railroad from Jackson, Miss., to New Orleans, La., and that the train in question received one mail pouch at Wanilla, but the testimony failed to show whether this mail pouch originated within or without the state of Mississippi.

The rule for determining whether the liability of the defendant to this injured employee is controlled by the federal Employers' Liability Act is well established, and has been repeatedly announced by the United States supreme court, and the only difficulty arises in applying this test to the particular facts.

"The true test of employment in [interstate] commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in

work so closely related to it as to be practically a part of it." *Shanks* v. *Delaware, Lackawanna & Western Railroad Company*, 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797.

The same principle was announced in *Pederson* v. *Delaware, Lackawanna & Western Railroad Company*, 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, and has been illustrated and applied in many other cases by that court.

While the appellant company only owned and operated an intrastate railroad, there can be no question that the company itself was engaged in both intrastate and interstate commerce. When train No. 2, upon which the appellee was injured, was made up at Natchez, Miss., for service between that point and Hattiesburg, Miss., without any kind of commerce on it, it was an intrastate train, and the character of this train remained unchanged until it was shown that it engaged in interstate transportation. A good deal of the testimony in the record was devoted to showing that this train had interstate mail connections from which it usually received interstate mail, but, conceding for the purpose of this decision that the United States mail is commerce within the meaning of the act, the testimony wholly fails to show that the train in question received a single item or parcel of interstate mail. The testimony does establish the interstate character of the service from Natchez, Miss., to Brookhaven, Miss., but the evidence shows that, at the latter point, every interstate shipment that was shown to have been on the train was delivered to a connecting carrier. The train had then completed about one-half of its journey between its terminal points, and from Brookhaven, Miss., to Hattiesburg, Miss., the evidence wholly fails to show that the train carried any interstate shipment or commerce whatever.

In the case of the *Illinois Cent. R. Co.*, v. *Behrens*, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, where the injured employee was a member of a crew

attached to a switch- engine operated exclusively in the city of New Orleans, in stating the facts, the court said:

"In short, the crew handled interstate and intrastate traffic indiscriminately, frequently moving both at once and at times turning directly from one to the other. At the time of the collision the crew was moving several cars loaded with freight which was wholly intrastate, and upon completing that movement was to have gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the state."

In passing upon the question as to whether, upon these facts, the injured employee, at the time of his injury, was employed in interstate commerce within the meaning of th Employers' Liability Act, the court said:

"Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce. . . .

"Here, at the time of the fatal injury the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."

In the case of *Chicago, Burlington & Quincy Railroad Company* v. *Harrington*, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941, the United States supreme court said: "As the question is with respect to the employment of the decedent at the time of the injury, (*Illinois Cent. R. Co.* v. *Behrens*, 233 U. S. 473, 478, 58 L. Ed. 1051, 1055, 34 S. Ct. 646, Ann. Cas. 1914C, 163); it is not important whether he had previously been engaged in interstate

commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed.''

See, also, the case of *Erie Railroad Co.* v. *Welsh*, 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319.

Applying the principles announced in these cases to the facts in the case at bar, we have reached the conclusion that the appellee was not engaged in interstate commerce at the time of his injury, and that the liability of the appellant is not controlled by the Employers' Liability Act. The fact that this intrastate train was engaged in interstate commerce for a part of its journey does not stamp it as a train engaged in interstate commerce throughout its journey. The interstate service of the injured employee ended at Brookhaven, Miss. From that point to the terminus of the railroad at Hattiesburg, at which point the appellee was injured, it is not shown that any interstate shipments were handled, and since the injured employee was not engaged in interstate commerce at the time of the injury, it is immaterial that he had previously been or in the immediate future might be so engaged.

The court below instructed the jury for the plaintiff:

''That in all actions against railroad corporations using engines, locomotives and cars propelled by the dangerous agency of steam and running on tracks, for damages done to persons, proof of injury inflicted by the running of the engine, locomotives, and cars of any such railroad is *prima-facie* evidence of the want of reasonable skill and care of such railroad corporation in reference to such injury.''

The appellant contends that this instruction constituted reversible error, without reference to whether or not this case was controlled by the federal Employers' Liability Act; the contention of the appellant being that, since this court has held that, when the facts and circumstances under which the injury was inflicted are in evidence, the issues must be determined from the facts and

not on any presumption of negligence, it was error to grant this instruction for the reason that the attendant facts were shown in this case. This question is controlled by previous decisions of this court. The evidence as to the circumstances attending this injury was conflicting, but it was held in the case of *Alabama & Vicksburg Ry. Co.* v. *Thornhill,* 106 Miss. 387, 63 So. 674, that:

"Even though the facts and circumstances are in evidence, and although there may be no conflict therein as to what these facts and circumstances are, unless they justify the court in directing a verdict, it is proper to charge the jury on request of the plaintiff that proof of injury by the running of the cars is *prima-facie* evidence of negligence."

In the case of *Vicksburg & Meridian Railroad Co.* v. *Phillips,* 64 Miss. 693, 2 So. 537, the court said: "The statute was enacted to meet cases where the manner of the injury inflicted is not known to others than the employees of the railroad company, but it is equally applicable where a cloud of witnesses see the injury. It is not needed there, it is true, but it is not error to invoke it, for the law affects the railroad company with liability, *prima facie,* in every case of injury inflicted by the running of its locomotives or cars. If the evidence showing the injury inflicted rebuts the presumption, well, but if it does not, the presumption created by law from the fact of the injury in this mode is to stand and control.

"It is proper for the court, at the instance of the defendant, to instruct the jury that when the circumstances accompanying the infliction of injury by the running of locomotive or cars are in evidence before them, it is to decide the question of skill and care in reference to the injury from those circumstances. Presumption must yield to facts where they are all known. But it cannot be said to be erroneous to instruct the jury that the law presumes wrong and imputes blame from the fact of injury inflicted by the running of locomotive or cars."

These announcements of the court are decisive of this contention, and consequently the judgment of the court below will be affirmed.

*Affirmed.*