Day, J.
 

 While several grounds of error are urged by the plaintiff in error, we shall consider but two: First. Was there jurisdiction in the court below to hear this action, under the federal Employers’ Liability Act? Second. Is there error in the record because of the failure of the court to submit to the jury interrogatories at the request of the railroad company, pursuant to Section 11463, General Code?
 

 This record discloses conflicting claims of the parties relative to the placing of the three loaded cars at the point upon the house- track where the
 
 *96
 
 three empty cars had been standing, which empty cars were to be taken over to Demmler in intrastate traffic. Weber claims, and there is testimony corroborating his claim, that Culp, the conductor, told him that the three loaded or interstate cars were to be placed upon the same position on the house track as the three empty cars. Culp does not admit this, but claims that the three loaded cars were to be placed at any point upon the house track available for unloading. This question was put to the jury in the general charge of the trial court, after explaining the meaning of interstate traffic, by his instruction that, if they found the plaintiff Weber was not engaged in interstate traffic at the time of his injury, he could not recover, and their verdict should be for the railroad company. The finding of the jury upon this point must have been favorable to Weber, and we must therefore assume that they believed that the three loaded cars, engaged in interstate traffic, were to be placed upon the house track in the same position as the three empty cars about to be used in intrastate traffic, and that it was necessary to remove the empty cars in order to place the loaded interstate cars in their final destination.
 

 In the handling of freight and in general railroad work in a freight yard the operations of employes are of both intrastate and interstate character, constantly changing from one to the other, and the question becomes one of fact, whether at the particular time of the injury the employe was engaged in interstate commerce or in work so intimately connected with interstate commerce as to be practically a part of it, or was at the particu
 
 *97
 
 lar time in question engaged in work intrastate in character. If the operation is a mixed oné, and the employe is engaged at the time in both classes of commerce, then we feel that the federal rule should dominate; and, applying this principle to the situation before us, it is apparent that before the three loaded cars could be placed upon the house track in the position of the three empty cars the latter would have to be moved. On the other hand, upon moving said empty cars such act became the first step in the inducting of said empty cars into intrastate traffic; that is, it was the first movement in taking the cars to Demmler, which was an order for a purely intrastate operation. There is evidence tending to show that the movement of the three empty cars under the circumstances partook of the characteristics of both interstate and intrastate traffic. If we were at liberty to accept the theory of the railroad company that the three loaded cars were to be placed in or upon the house track for unloading, regardless of the position of the three empty cars, at any point within the 600 or more feet of unloading space, we might well say that the interstate operation had ceased when the three loaded ears were allowed to run in on the lead track, uncoupled from the engine, and that thereupon the crew entered upon the first step of the intrastate operation by going after the three empty cars for the purpose of taking them to Demmler, pursuant to 'the orders received by Culp at Braddock. However, as before indicated, the jury having found, under the charge of the court, that Weber was engaged in interstate traffic, and there being evidence in the record tend
 
 *98
 
 ing to support such a view, if the location of the three empty cars upon the house track was to become the location of the three loaded interstate traffic cars, it is apparent that the interstate transaction could not be completed without removing the empty cars and placing the loaded ones at their final point of destination. To do this it was essential to first remove the three empty cars. This must have been the conclusion of the jury in the trial court and there is evidence in the record tending to support that view.
 

 It is the contention of the railroad company, and there is evidence tending to so show, that the three empty cars had started upon their intrastate journey; that they were to be coupled on to the three loaded cars, which were to be shoved back in on the house track, which would have been their final point of destination; and that then the interstate transaction would have concluded and the intrastate operation would proceed to its completion. Taking that view of the record, the movement of the empty cars in the first instance might be said to have been purely intrastate in character, and, the accident having occurred when undertaking such duties, it might be said that it was while engaged in intrastate work that the injury to Weber was received. The evidence being conflicting, therefore, we feel that the court below did not err in refusing to direct a verdict upon the jurisdictional ground.
 

 Many cases are cited to sustain the contention of the respective counsel. On the part of the
 
 *99
 
 plaintiff in error the principal cases are:
 
 Grigsby
 
 v.
 
 Southern Ry. Co.
 
 (C. C. A.), 3 F. (2d), 298;
 
 Illinois Central Rd. Co.
 
 v.
 
 Behrens, Admr.,
 
 233 U. S., 473, 34 S. Ct., 646, 58 L. Ed., 1051, Ann. Cas., 1914C, 163;
 
 Erie Rd. Co.
 
 v.
 
 Welsh,
 
 242 U. S., 303, 37 S. Ct., 116, 61 L. Ed., 319.
 

 In the
 
 Grigsby case
 
 the facts show that Grigsby was a brakeman on a train of empty coal cars, and was killed while switching, after an interstate car had been dropped at a junction point. It was held that he was not engaged in interstate commerce, though one of the cars switched was subsequently billed as interstate, and though other interstate cars were picked up by the train on its return trip, after having disconnected from the original interstate car at the junction point. It was while Grigsby was moving certain loaded coal cars, to place on a switch or sidetrack some unassigned empty cars, that he was killed by a lump of coal falling off one of the shifted cars. A number of these cars which this crew had to move were shifted about in order to perform its work of placing in position the unassigned empty coal ears billed in interstate commerce, and some of them in intrastate. Grigsby was killed by the falling of a large lump of coal from one of the two cars that in the afternoon was billed intrastate, but at the time of the accident had not yet been billed.
 

 Illinois Cent. Rd. Co.
 
 v.
 
 Behrens, supra,
 
 was a case where a fireman employed by an interstate railroad carrier on a switching engine was killed while aiding in the work of moving several cars, all loaded with intrastate freight, between two points in the same city, although upon completion
 
 *100
 
 of that task the switching crew was to have gathered up and taken to other points several other cars as a step or link in both interstate and intrastate transportation. It was held that at the time of the injury, he (Behrens) was not' engaged in the particular service of interstate commerce. It should be noted, however, that no part of the intrastate service was so closely connected with the interstate operation as to constitute a part thereof; and upon this theory, that the two transactions, interstate and intrastate, were not associated, it was held in the
 
 Behrens case
 
 that the transaction was purely intrastate.
 

 The third case upon which plaintiff in error relies is
 
 Erie Rd. Co.
 
 v.
 
 Welsh,
 
 242 U. S., 303, 37 S. Ct., 116, 61 L. Ed., 319. It appears therein that a yard conductor on an interstate railway, injured while alighting from a slowly moving freight engine for the purpose of reporting to the yardmaster’s office for further orders, having executed all previous orders, was not employed in interstate commerce, although the orders which he would have received, had he not been injured, would have required him immediately to make up an interstate train.
 

 The defendant in error claims that this case is not applicable for the reason that Welsh had performed an interstate movement; that that particular movement was entirely completed and did not require any further action on his part, and also that there is a very marked difference, on the one hand, between mere expectation that an act done in intrastate commerce would be followed by work of a different character in interstate commerce,
 
 *101
 
 and, on the other hand, the doing of an act in intrastate commerce
 
 for the purpose of furthering the tuorTc of interstate commerce.
 
 In support of this distinction, reference is made to the language of Mr. Justice Holmes in
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 Parker, Admr.,
 
 242 U. S., 13, 37 S. Ct., 4, 61 L. Ed., 119, quoted hereafter.
 

 On the part of the defendant in error, the case of
 
 Pennsylvania Rd. Co.
 
 v.
 
 Donat,
 
 239 U. S., 50, 36 S. Ct., 4, 60 L. Ed., 139, is urged as an authority in support of his position. Prom that case it appears that two loaded cars coming from without the state were received in carrier’s yard at Ft. Wayne, Ind. They were destined to Olds’ private switch, connecting with the yard, and, acting under the instructions, Donat commenced the switching movement requisite to placement thereon. “There was evidence tending to show that in order to complete the movement it became necessary to uncouple the engine from the loaded cars and with it to remove two empty ones from the private track. While engaged about the removal plaintiff in error was injured. The trial court submitted to the jury for determination whether he was engaged in interstate commerce at the time of the injury, and in approving such action the Circuit Court of Appeals was clearly right.” The jury in that case returned a verdict in favor of Donat.
 

 Plaintiff in error denies the application of the
 
 Donat case
 
 because “the empty car was not being handled for the purpose of taking it away from its then location, but to make a place for the loaded car”; in other words, that there was no order inducting the empty car into intrastate ■ commerce; as is the fact in the case at bar.
 

 
 *102
 
 The case of
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 Parker,
 
 242 U. S., 13, 37 S. Ct., 4, 61 L. Ed., 119, is strongly relied on by defendant in error. In that case a railway fireman on a switch engine was killed by striking the caboose on the main track while his engine was transferring an empty car from one switch track to another. It was held he was employed in interstate commerce, although the car itself was not moving in such commerce, as this movement was simply for the purpose of reaching and moving an interstate' car. In the opinion in this case, Mr. Justice Holmes uses this language:
 

 “The difference is marked between a mere expectation that the act done would be followed by other work of a different character, as in
 
 Illinois Central R. R. Co.
 
 v.
 
 Behrens,
 
 233 U. S., 473, 478 [34 S. Ct., 646, 58 L. Ed., 1051, Ann. Cas., 1914C, 163], and doing the act for the purpose of furthering the later work [interstate commerce].”
 

 Plaintiff in error contends that the affirmance of the
 
 Parker case
 
 by the Supreme Court of the United States was based upon the fact that no question was.made in the state court as to its being anything but intrastate commerce. Therefore, there being no federal question raised to review, the Supreme Court of the United States did not disturb the decision of the state court.
 

 Another case relied upon by the defendant in error is
 
 Reap
 
 v.
 
 Hines, Agent
 
 (C. C. A.), 273 F., 88, wherein it was held:
 

 “A switchman, who was injured by falling from a car containing an intrastate shipment, while it was being moved from one track to another to enable the switching crew to get other cars to make
 
 *103
 
 up an interstate train, was engaged in interstate business, or in an act so directly and immediately connected with such business as substantially to form a part or necessary incident thereof, and therefore could maintain suit for his injuries under the federal Employers’ Liability Act.”
 

 See, also,
 
 Pedersen
 
 v.
 
 Delaware, Lackawanna & Western Rd. Co.,
 
 229 U. S., 146, 33 S. Ct., 648, 57 L. Ed., 1125, Ann. Cas., 1914C, 153.
 

 From the foregoing authorities, we have arrived at the conclusion that the true test always is, Is the work in question a part of the interstate commerce in which the carrier is engaged, or so closely connected therewith as practically to be a part of it? And if the act in question partakes of the characteristics of both interstate and intrastate commerce, and at the particular time of the accident the employe is engaged in both classes, the federal rule must dominate. The case we have here is one where the evidence was conflicting as to whether it was interstate or intrastate commerce, and, such being the state of the record, we cannot say that the court erred in submitting that issue of fact between the parties to the jury.
 

 The second ground of claimed error is the failure of the court to give to the jury the interrogatories which were submitted by the railroad company to be answered by the jury in the event they found a general verdict. The General Code, Section 11463, provides:
 

 “When either party requests it, the court shall instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon.”
 

 
 *104
 
 This is a right specifically given to either party, and its denial, unless for good reasons, is prejudicial. This section, while mandatory on the court, does not permit counsel to submit to the jury questions which relate to merely evidential facts; they should be restricted to those ultimate facts upon which the rights of the parties depend.
 

 Interrogatory number 8 was as follows: “Could the crew of which Mr. Weber was a member have placed the three loaded cars brought to Braddock from Bessemer on No. 1 house track without moving the three empty cars that were standing on said No. 1 house track near the west end of the freight station?”
 

 This interrogatory had to do with the paramount question in this lawsuit, to-wit, Did Weber receive his injuries while engaged in interstate or intrastate commerce? If the three loaded cars could have been placed on the No. 1 house track without moving the three empty cars that were then standing on the house track, near the west end of the freight station, then and in that event Weber, at the time of his injury, would have been engaged in intrastate traffic; for it is apparent that the moving of the empty cars was purely for the purpose of carrying out the orders to take the same to Demmler, Pa. On the other hand, if it was necessary to move these empty cars in order to place the three loaded cars, brought to Braddock from Bessemer, on the No. 1 house track near the west end of the freight station, in the position formerly occupied by the empty cars, then and in that event Weber was engaged in interstate commerce in proceeding to remove the empty cars in order to complete the interstate transaction.
 

 
 *105
 
 An answer to this interrogatory would have established ultimate and determinative facts which had a direct bearing upon the paramount issue of the lawsuit. To deny the plaintiff in error the privilege of having this question answered was, in our opinion, prejudicial error. The purpose of this section of the General Code (11463) is to elicit from the jury such special findings of fact as will test the correctness of a general verdict.
 

 “Revised Statutes, Section 5201 [Section 11463, General Code], so far as it relates to special findings upon particular questions of fact, is mandatory only when the request therefor contains the condition that the questions which are submitted shall be answered in case a general verdict shall be rendered. * * * The trial court should exercise with great deliberation and caution the power of * * # refusing to submit questions propounded: * * * questions, the answers to which establish probative facts from which an ultimate material fact may be inferred as a matter of law should be allowed.”
 
 Gale
 
 v.
 
 Priddy,
 
 66 Ohio St., 400, 64 N. E., 437.
 

 As was said in
 
 Walsh
 
 v.
 
 J. R. Thomas’ Sons,
 
 91. Ohio St., 210, 110 N. E., 454, in construing Sections 11463 and 11464, General Code:
 

 “Whenever a proper special finding is submitted to the jury upon a controlling, ultimate fact, the statute makes it the imperative duty of the court to submit such question for their determination. * The purpose of the section was to give either party in the case the right to demand, uninfluenced by the action of the court, an answer upon
 
 *106
 
 a controlling issue without regard to the general verdict. It frequently happens in the trial of a case that the controlling issue of fact thus specially found by the jury may be inconsistent with the general verdict; and to interfere with the province of the jury in this respect, * * * is clearly erroneous and prejudicial.”
 

 We think that to deny the plaintiff in error answer to this interrogatory by jury was prejudicial error and requires a reversal of this case.
 

 Other grounds of error are urged, but in view of the fact that this case must be retried, when doubtless new and additional evidence will be introduced, it is not necessary to discuss other errors claimed to exist in the present state of the record.
 

 In the general charge it would have been better to have left it to the jury to say what length of time the plank had been protruding over the track, in order to constitute constructive notice, rather than for the court to fix the time.
 

 We have therefore reached the conclusion that, for error in not submitting interrogatory No. 8 to the jury for answer in the event they reached a general verdict, it becomes our duty to reverse the judgment of the Court of Appeals and remand this case for further proceedings according to law.
 

 Judgment reversed and cause remanded.
 

 Jones, Matthias, Allen, Kinkade and Robinson, JJ., concur.
 

 Marshall, C. J., concurs in proposition 2 of the syllabus and in the judgment.