Agnes Sullivan *vs*. The New York, New Haven and Hartford Railroad Company.*

Third Judicial District, Bridgeport, April Term, 1926.

Wheeler, C. J., Curtis, Maltbie, Haines and Hinman, Js.

The sole redress of an employee injured while engaged in interstate commerce is under the Federal Employers Liability Act; he cannot choose between that remedy and the one afforded by our Workmen's Compensation Act.

The established test by which to determine whether an injured

* Petition for writ of certiorari denied by the Supreme Court of the United States on February 28th, 1927.

employee was engaged in interstate commerce is: was he at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

This test relates to the particular work being done by the employee at the precise time of the injury, regardless of the character of the service rendered by him in general throughout any given period or even on the day of the injury.

If the employee was engaged, at the time of his injury, in both interstate and intrastate commerce or in work incident to both, his remedy is exclusively under the Federal law.

In order that a railroad employee may be entitled to compensation under the State law, it need not appear affirmatively that he was engaged in intrastate commerce at the time of his injury, for it is sufficient if it is shown that he was not at that time engaged in interstate commerce.

There are many kinds of work performed by railroad employees which are so remotely connected with interstate commerce that they may be said to be indifferent to such commerce, or, in some instances, indifferent to any commerce or out of commerce. These distinctions cannot be arbitrarily defined, for they are largely questions of degree.

The terms "instruments, implements, or accessories of interstate commerce" have no definite legal significance, and the fact that an employee was injured while at work upon articles of that description affords no controlling basis for the conclusion that he was then engaged in interstate commerce, since only a few of them, such as tracks, roadbeds, etc., necessarily and conclusively connote work in interstate commerce to the exclusion of work in intrastate commerce or out of commerce.

While any conclusion may be attacked upon appeal if it is legally or logically inconsistent with the subordinate facts, it is fruitless for this court to disturb one which has no definite legal significance.

In the present case, the plaintiff's husband was employed as a clerk in the defendant's railroad station at Derby, his duties consisting of the oversight and protection of the station and its appurtenances, the handling of interstate and intrastate baggage and freight, the sale of tickets and the checking of baggage in interstate and intrastate commerce, the management of the mail, the care of the furnace, the sweeping of the station, the supervision of the toilets, the extinguishment of the electric lights and the locking of the door at the close of the day's work. On the evening in question, after assisting in loading mail upon an interstate train and in putting away a truck used in interstate and intrastate commerce, and while attempting to turn out the lights which were necessary for the comfort and

Sullivan *v.* New York, N. H. & H. R. Co.

convenience of passengers and employees and for the conduct of the business of the station, his hand came in contact with portions of the switch charged with electric current and he was killed. *Held* that the work which he was performing at the time of his injury was in the nature of janitor service and that he was not at that moment engaged in interstate transportation or in work so closely related to it as to be practically a part of it; and that, therefore, the plaintiff, his widow, was entitled to compensation under the law of this State.

Argued April 14th—decided October 18th, 1926.

APPEAL by the defendant from a finding and award of the compensation commissioner of the fifth district in favor of the plaintiff, taken to the Superior Court in New Haven County and reserved by the court (*Simpson, J.*), upon its own motion, for the advice of this court. *Superior Court advised to dismiss the appeal.*

The record discloses the following facts to have been found by the commissioner as corrected by the Superior Court:

Edward J. Sullivan, plaintiff's decedent, had been employed under a contract of employment with the defendant, as a clerk in its station at Derby, Connecticut, for a considerable time next before December 30th, 1924. His average wage computed according to law was $30.24 a week. Each of these parties was, within certain limitations and under certain circumstances, subject to the provisions of our Workmen's Compensation law. The defendant is a corporation owning and operating railroads in Connecticut, portions of Massachusetts and portions of New York. On this day the decedent was a man of unusual strength and muscular activity; if he had any physical defect it was latent. The plaintiff was the lawful wife of the deceased, living with him and being regularly supported by him during his lifetime.

The Derby station, its platform, waiting and bag-

gage-rooms were used for interstate and local and intrastate commerce, and serving and accommodating passengers, for the handling of baggage and for the protection and shelter of baggage, tickets, mail and parcel post. Both station and waiting-room were instruments of interstate and intrastate commerce. Decedent's employment on this day included the oversight and protection of the station, platforms, appurtenant rooms, the handling of interstate and intrastate baggage and freight, the selling of tickets and the checking of baggage in interstate and intrastate commerce, the handling of mail, the taking care of the furnace, and the sweeping of the passenger station, the looking after the toilets, the turning off of the electric lights for the station and locking its door on leaving it after the day's work.

Decedent assisted on this day in placing upon the mail car on train #279, mail destined for points outside Connecticut. After this train had left the Derby station the decedent's duties for the day were finished with the exception of assisting in putting away a truck which was used in interstate and intrastate commerce, extinguishing the station lights, and locking up the station. There is a light in the ticket office of the passenger station which is left burning through the night. This light is not connected with the switch hereinafter referred to. The other lights in the station, including lights in the toilets, in the passenger waiting-room and on a platform, are all controlled by a switch of the type known as a "knife switch," located in the ticket office. These lights were necessary for the comfort and convenience of passengers in, and defendant's employees engaged in, interstate and intrastate commerce; they were also necessary in loading mail and parcel post on trains, and for the conduct of defendant's business in interstate and intrastate com-

merce. While decedent was trying to turn off these lights, his right hand came in contact with those portions of the switch carrying electric current, which passed into and through his body; he was found by a fellow workman lying on the floor in an unconscious condition gasping for breath, with his feet near this switch and his overcoat, which had been hanging on a hook near the switch, lying on the floor. A physician was summoned by telephone as soon as possible; when he reached the station the decedent was dead. The commissioner concluded that the decedent met with death from an electric shock received in an effort to turn off these lights with this switch.

*Robert J. Woodruff* and *Patrick B. O'Sullivan,* with whom, on the brief, was *Avery Tompkins,* for the plaintiff.

*Harry M. French,* for the defendant.

CURTIS, J. The commissioner held that it was the work which the deceased was doing at the precise time when his injury occurred which was decisive, and held that the deceased met with his death by reason of an injury arising out of and in the course of his employment, and that his employment when he met with this injury was not a part of interstate commerce, but was such an employment as to bring the parties within the provisions of our Workmen's Compensation Act, and therefore awarded the plaintiff, the wife of the deceased, the compensation provided by the Act.

The defendant assigns as reasons of appeal: (1) that this conclusion of the commissioner is legally inconsistent with the subordinate facts found by him; (2) that the commissioner had no jurisdiction, because both employer and employee, at the time of the injury complained of, were engaged in interstate com-

merce; (3) that the commissioner erred in his conclusion that the decedent was not engaged in interstate commerce at the time of the injury complained of.

The case is reserved for the advice of this court upon the grounds stated.

These reasons of appeal raise the question whether, under the facts found, the decedent, at the time he was injured, was engaged in interstate commerce. If he was so engaged, his dependent is not entitled to compensation under our Workmen's Compensation Act, but must seek her remedy under the Federal Employers Liability Act. The dependent cannot take her choice of remedies under these Acts. *Gruszewsky* v. *Director General of Railroads,* 96 Conn. 119, 113 Atl. 160.

The commissioner found that the deceased met with death from an electric shock received in an effort to turn off the lights as above recited, and made an award as above stated.

The defendant claims, under the facts found, that the commissioner had no jurisdiction to make such award because Sullivan, when injured, was engaged in interstate commerce.

The true test, by which to determine whether an employee of a railroad was engaged in interstate commerce when injured, is that laid down in numerous cases, and in *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 36 Sup. Ct. 188, it is thus stated, on page 558: "The true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." The court also said: "The question for decision is, was Shanks at the time of the injury employed in interstate commerce within the meaning of the Employers' Liability Act? What his

employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered when the injury was suffered." The court also held that the term, "the service being rendered when the injury was suffered," in the Federal Act, refers not to the service being rendered in general by the employee or to that being rendered on the day of the injury, but to the service being rendered at the very time of the injury. See also *Illinois Central R. Co.* v. *Behrens,* 233 U. S. 473, 34 Sup. Ct. 646.

As was said in *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 180, 36 Sup. Ct. 517: "It is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed. . . . 'The true test . . . is, was the employee at the time of the injury engaged in interstate transportation.' "

A rule is thus correctly summarized from the cases in 12 Corpus Juris, p. 45: "It is not sufficient that the general employment of the person injured be of an interstate character or that he be engaged in interstate commerce at a time other than that of his injury, but he must be engaged in interstate commerce at the precise time of his injury. In other words, the particular service in which he is engaged when injured must be of an interstate character."

This principle is well illustrated in the case of *Illinois Central R. Co.* v. *Behrens, supra.* The injured employee was a member of a crew attached to a switch engine in New Orleans. The opinion, on page 476, reads: "The general work of the crew consisted in moving cars from one point to another within the city. . . . Sometimes the cars were loaded, at others empty. . . . In short, the crew handled interstate and intrastate traffic indiscriminately, frequently moving

both at once and at times turning directly from one to the other. At the time of the collision [and injury] the crew was moving cars loaded with" intrastate freight. "The Circuit Court of Appeals desires instructions" as to "whether upon these facts it can be said that the intestate at the time of . . . injury was employed in interstate commerce within the meaning of the Employers' Liability Act." The court continues (p. 478): "It is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce. . . . 'The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged.' " See also *Pederson v. Delaware, L. & W. R. Co.,* 229 U. S. 146, 33 Sup. Ct. 648. The United States Supreme Court answered the question submitted in the negative, and held that it could not be said that the intestate at the time of his fatal injury was employed in interstate commerce within the meaning of the Federal Employers Liability Act.

The ruling of the commissioner that Sullivan at the time of his injury was not engaged in interstate commerce is attacked by the defendant on the holding in the case of *Erie Railroad Co.* v. *Winfield,* 244 U. S. 170, 37 Sup. Ct. 556, where an employee whose employment during the day was that of an engineer engaged in both intrastate and interstate commerce, who had put his engine away for the night and was crossing the yard on his way home when he was struck and killed by a switch engine. The court said, page 173: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. . . . Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a

whole, for it was no more an incident of one part than of another. His day's work was in both intrastate and interstate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance."

The defendant claims, in effect, that the *Winfield* case, *supra*, establishes two principles of law relating to this subject-matter whose application to the facts in the instant case compel a decision for the defendant.

The defendant further claims that the *true test* by which to determine whether an employee of a railroad was engaged in interstate commerce when injured as in the instant case, has been radically changed by the *Winfield* case. The two principles of law which the defendant in effect claims have been established by that case, are:

1. Where the work of an employee of a railroad engaged in interstate and intrastate commerce, is during the day of the injury in both kinds of commerce, he is during the entire period of employment on that day engaged in interstate commerce.

2. An employee thus engaged in interstate commerce, continues to be so employed after transportation for the day ceases, if he continues in the performance of any further duties for the railroad.

That these claimed principles are in conflict with the cases holding and illustrating that the true test to determine whether an employee of a railroad is engaged in interstate transportation is, "Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" seems apparent.

The *Behrens* case demonstrates this conflict, as

do the other cases cited. In the *Behrens* case the injured employee was a member of a switching crew engaged in switching cars of freight of both interstate and intrastate character about New Orleans; there was therefore employment in both kinds of commerce during the day. There was a collision while switching freight-cars and the employee was injured. If his day's work as a whole was to be considered, he was engaged in both kinds of commerce, and according to the defendant's construction of the *Winfield* case, he was therefore engaged in interstate commerce at all times. In the *Behrens* case, no such rule was recognized, but, because the facts found disclose that the injured employee at the time of the injury was engaged in switching intrastate freight, that fact was held to control, and his employment at the time of the injury was held not to be in interstate commerce, but in intrastate commerce. The court held that Congress intended to confine its action to the injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce.

We are unable, therefore, to find that the two principles of law claimed to be established by implication from the case of the *Erie Railroad Co.* v. *Winfield, supra,* were therein established, or that any principles were therein established which take the instant case from under the rule announced in the *Shanks* case and the other cases cited.

The claimed inconsistency between a holding in the instant case that Sullivan was not engaged in interstate commerce when injured, and the holding in the *Winfield* case that the injured employee was so engaged, dissolves upon a comparison of the facts and rulings in the *Behrens* case with the facts and rulings in the *Winfield* case.

In the *Winfield* case the injured employee was an

engineer engaged on the day of his injury in actual transportation, handling interstate and intrastate traffic with his engine. After his day's work was over and he had left his engine in the place where it was to remain for the night, he started to cross the carrier's yard to go home, and was killed while crossing the railroad yard. So it was shown that the injured employee was not injured while engaged in hauling with his engine either interstate or intrastate commerce, and it was held that when he left his engine in the roundhouse and started to walk across the carrier's yard he was still in the employ of the railroad, and engaged in its service in performing a necessary incident of his day's work as a whole, which had been hauling both interstate commerce and intrastate commerce. Under the Federal Employers Liability Act, the fact that he was thus engaged in interstate commerce confined him to the remedy, if any, provided in that Act. The mere fact that he was when injured engaged in intrastate commerce as well as interstate gave him no remedy under the State law.

In the *Behrens* case, as in the *Winfield* case, the injured employee before the time of his injury had been engaged in interstate and intrastate commerce. In the *Behrens* case the injured employee was injured while engaged in hauling freight in intrastate commerce, whereas in the *Winfield* case the injured employee was not injured while hauling freight in either kind of commerce, but was injured while engaged in a duty which under the peculiar conditions of that case was work incident to both interstate and intrastate commerce.

It clearly appears, therefore, that the *Winfield* case has made no change in the true test "by which to determine whether an employee of a railroad was engaged in interstate commerce when injured" as defined

above. And further, that the two principles of law, set forth above, which the defendant impliedly claimed to have been established by the *Winfield* case, were not established by that case.

This discussion of the true test by which to determine whether an employee of a railroad was engaged in interstate commerce when injured, demonstrates that the test quoted from *Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S. 556, 36 Sup. Ct. 188, is the established test.

In the instant case, therefore, the question presented is: Was Sullivan, when injured, engaged in interstate transportation or in work so closely related to it as to be practically a part of it? Sullivan was employed as a clerk at the Derby station; among his duties at the station was certain work in the nature of janitor's work; the record discloses that Sullivan's work on the day in question included, among other work, the taking care of the furnace and the sweeping of the passenger station, the looking after the toilets, the turning off of the electric lights for the station and locking its door on leaving it (the station) after the day's work. Sullivan, when injured, was employed in turning off the electric lights for the station after the day's work. Did this work bring him under the terms of the true test to determine whether he was employed in interstate commerce? Was he then "engaged in interstate transportation or in work so closely related to it as to be practically a part of it"? *Shanks* v. *Delaware, L. & W. R. Co., supra.*

It is apparent that the turning off of the electric light, which was used merely as a convenience at the station after dark, was not a piece of work which participated in any way in the movement of interstate transportation, and since the day's work was then at

an end, could not then have been so closely related to it as to be practically part of it.

Under the finding it would have been equally pertinent to claim that any work Sullivan may have done in taking care of the furnace, or in sweeping the passenger station, or looking after the toilets, was work in interstate transportation or work so closely related to it as to be practically part of it.

Sullivan, when injured, was turning out the electric light in question; that employment was not related to the actual transportation of interstate commerce and was not so closely related to it as to be practically part of it.

There is a certain misconception in dealing with this matter which is apt to mislead. This misconception is in thinking that an employee of a railroad engaged in both interstate and intrastate commerce, if not engaged in interstate commerce is engaged in intrastate commerce, and further that in order to secure relief under a State Compensation Act, he must be engaged in intrastate commerce.

The following excerpt from the opinion in *Industrial Accident Commission* v. *Davis,* 259 U. S. 182, 42 Sup. Ct. 489, demonstrates that such idea is not tenable. In that case the court said (p. 187): "Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement, indeed, are necessary to it, but so are all attached to the railroad company, official, clerical or mechanical. Against such a broad generalization of relation we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the

test declared, that the employee at the time of the injury must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in order to displace State jurisdiction and make applicable the Federal Act." The court then makes this important distinction: "And there is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and give it to those employed upon them." It thus appears, that in order to entitle one to relief under a State Act, it is not a requisite that he was employed in intrastate commerce, merely that he was not employed in interstate commerce.

So also in *Pederson* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 33 Sup. Ct. 648, where certain work of such an employee is spoken of as work which is "indifferent" to interstate commerce, and hence by the same token may be indifferent to any commerce.

In *Pederson's* case, page 151, it is stated that a guide to the decision of whether work is being done in interstate commerce may be found in the question, "Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting on the carrier?"

We are of the opinion that in so far as interstate commerce was concerned, the janitor's work in which Sullivan was engaged when injured was a matter of indifference to interstate commerce, which had already ceased for the day, and was not so closely connected with interstate commerce as to be practically a part of it. It is a question of degree, and the turning off of the electric light is too remote from the movement of

interstate commerce to be reasonably or logically held to be a part of it.

The use in the amended finding of the term "instruments of interstate commerce" as applied to the Derby station and various appurtenances thereof seems to breed confusion. This term has no definite legal significance in the law relating to this matter. It is not a term defined in the Federal Employers Liability Act. The confusion and danger in its use arises from deeming the application of such term to any article as equivalent to a valid conclusion, that such article is one of such a nature that work upon it is employment in interstate commerce, or in work so closely related to it as to be practically part of it. The term is not specifically defined in any such way in the decisions in this class of cases in the United States Supreme Court. That court has specified in several decisions that a few articles in the equipment of a railroad engaged in interstate commerce are of such a nature as to make work upon them, work in interstate commerce. In *Industrial Accident Commission* v. *Davis, supra,* page 187, the court, in discussing a railroad actually engaged in interstate commerce, speaks of "tracks, bridges and roadbed and equipment in actual use" as articles having a definite character, that is, as articles in interstate commerce, so that these articles "give . . . to those employed upon them" that character, that is, such employment is work in interstate commerce. These few specific articles of the equipment of such a railroad have such quality, but no attempt is made to list further articles as having such quality; we are therefore left for guidance to the fundamental rule as set forth in the *Shanks* case, *supra,* as the true test, "Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically part of it?"

In *Industrial Accident Commission* v. *Davis, supra,* the court, at some length, illustrates what it means in the use of the term "accessories of interstate commerce," but not in such a way as to warrant the use of such term as a valid conclusion that work on an "accessory" is or is not work in such commerce. The terms "accessories of interstate commerce," "implements of interstate commerce," and "instruments of interstate commerce," are merely forms of expression which do not connote a valid conclusion that work upon an article so designated is, or is not, work in interstate commerce. Whatever terms are used by the trier in his finding, the ultimate test in cases of this character, upon which the judgment must depend, is whether, under the facts found, the trier has correctly concluded that the work upon which the employee was engaged at the time of his injury was or was not work "in interstate transportation or work so closely related to it as to be practically part of it."

It is true that under our system of law any conclusion of the trier may be attacked as a question of law, under the claim that such conclusion could not be legally or logically drawn from the subordinate facts, and it may be, on that ground, nullified and thus in effect removed from the finding. *Palumbo* v. *Fuller Co.,* 99 Conn. 353, 122 Atl. 63; *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 129 Atl. 527.

But when the trier has drawn a conclusion from subordinate facts in words that have no definite legal significance, it is usually fruitless, as it would be here, to nullify such conclusion.

The conclusion of the trier that numerous articles in the equipment of defendant railroad are "instruments of interstate commerce" is a conclusion which does not affect the "true test" to be applied to the work of this employee in order to determine whether the work he

was engaged in when injured was such work as remits him to such relief, if any, as he can secure under the Federal Employers Liability Act.

The claimant urges that, since under the facts found, there was no transportation of goods or passengers in interstate commerce going on at the Derby station at the time of the injury, and that such duties as the decedent was then performing were in the nature of janitor's work and not work relating to transportation, that he was not at the time he was injured engaged in interstate transportation or in work so closely related to it as to be practically part of it. That position is a sound one.

If the decedent had been an employee of the defendant whose sole duty was to do janitor's duty at the station after all movement of goods or persons in commerce was over for the day, would he, while doing such work, be deemed to be engaged in interstate commerce, or in work so closely related to it as to be practically part of it? If the conclusion that he would not is correct, as to such assumed employee, then the work which the decedent was engaged in at the time of the injury ought to be viewed from the same standpoint, and with a like result.

We are of the opinion that in so far as interstate commerce was concerned, the janitor's work in which Sullivan was engaged when injured was a matter of indifference to interstate commerce; that, in fact, it was work "out of commerce."

In the instant case the current of electricity and the electric light, when being turned off, were not directly and immediately used in interstate transportation, and cannot reasonably be deemed a part of interstate commerce; the decedent, therefore, at the time of turning out the electric light was not engaged in such commerce.

Borden v. Westport.

We think the commissioner properly held that it is the work which the injured employee was doing at the precise time when the injury occurred that is decisive, and that he correctly held that Sullivan was not engaged in interstate commerce when injured.

Applying the test above stated to determine whether, under the facts found, Sullivan was engaged in interstate commerce when injured, we think the commissioner correctly held that he was not so engaged, and hence that the question presented to us should be answered in the negative.

We hold, therefore, that the claimant's decedent at the time he was injured was not engaged in interstate commerce and that the claimant is entitled to compensation under our Workmen's Compensation Act.

The Superior Court is advised to affirm the award and dismiss the appeal.

In this opinion the other judges concurred.