Gasser *v.* Central Railroad Company of New Jersey, Appellant.

Argued December 12, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*George W. Aubrey* of *Aubrey, Friedman and Senger,* for appellant.

*E. Burke Finnerty,* and with him *Henninger & Snyder,* for appellee.

OPINION BY PARKER, J., March 3, 1934:

In this workmen's compensation case the only question involved is one of law as to whether it comes

within the terms of the federal Employers' Liability Act or is controlled by the Pennsylvania Workmen's Compensation Act.

There is no dispute as to the facts, which we will briefly state. William Gasser had been in the employ of defendant for a number of years and at the time of an accident which caused his death was engaged as station agent for the company at Walnutport, Pennsylvania. The company was regularly engaged at the place of employment in both interstate and intrastate commerce and transportation. Decedent's employment consisted of "general oversight of the station, the handling of interstate and intrastate shipments, the selling of tickets, acting as telegrapher, the recording of passing trains" and janitor service in and about the depot and platform. On July 24, 1931, at about 8:35 A. M., he was sweeping the platform at the depot and while so engaged came near the tracks and was struck and injured by a passing train, the injury resulting in his death the same day. It was shown that on that day he had handled several items of interstate freight and that he regularly performed services in both interstate and intrastate transportation.

On the question involved, the decisions of the Supreme Court of the United States are controlling: Mayers v. Union Railroad Co., 256 Pa. 474, 100 A. 967; and the question is one of law: Martini v. Director General, 77 Pa. Superior Ct. 529. While the case is near the border line, we are all of the opinion (1) that the employee was not participating in the actual movement of traffic; and (2) that his service was not so related to an instrumentality of transportation as to be practically inseparable from the use of that instrumentality in moving traffic. See 2 Federal Liabilities of Carriers, by Roberts (2nd Ed.) 1371.

We will briefly refer to the cardinal principles as

laid down by the United States Supreme Court, and which lead us to the conclusion stated. "Having in mind the nature and usual course of the business to which the act [Employers' Liability Act] relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see Swift & Co. v. United States, 196 U. S. 375, 398), and that the true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it": Shanks v. D., L. & W. R. Co., 239 U. S. 556, 558. "It will be observed that the word used in defining the test is 'transportation,' not the word 'commerce.' The two words were not regarded as interchangeable, but as conveying different meanings. Commerce covers the whole field of which transportation is only a part; and the word of narrower signification was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. It is engaged in the transportation of persons and things in commerce; and hence the test of whether an employee at the time of his injury was engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation or in work so closely related to such transportation as to be practically a part of it": Chicago & N. W. Ry. Co. v. Bolle, 284 U. S. 74, 78.

"So, also, as the question is with respect to the employment of the decedent at the time of the injury, it is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed": C., B. & Q. R.

Co. v. Harrington, 241 U. S. 177, 179. The decisions of the United States Supreme Court clearly establish the rule that the status of the employee with respect to interstate commerce is tested by the work that he is actually performing at the time and not by service being rendered in general: Illinois Cent. R. Co. v. Behrens, 233 U. S. 473.

Applying these tests, the United States Supreme Court has held that the requisite employment in interstate commerce does not exist where a member of a switching crew, whose general work extends to both interstate and intrastate traffic, is engaged in hauling a train or drag of cars, all loaded with intrastate freight, from one part of a city to another: Ill. Cent. R. Co. v. Behrens, supra; or where an employee in a colliery operated by a railroad company is mining coal intended to be used in the company's locomotives moving in interstate commerce: Del., Lack. & W. R. Co. v. Yurkonis, 238 U. S. 439; or where an employee was usually engaged in firing a stationary engine to generate steam used for heating a depot and baggage room used for general railroad purposes and the steam was also used to heat passenger coaches standing in the yard, some of these coaches being taken off interstate trains, and for other purposes clearly involving interstate traffic, but at the precise time of the accident was on a locomotive which was being used as a substitute for the stationary boiler, and was making a trip with the engine for the purpose of procuring a supply of coal to generate the steam: Chicago & N. W. Ry. Co. v. Bolle, supra; or where the plaintiff was oiling an electric motor used for hoisting coal into a chute then to be used by locomotives moving interstate freight: Chicago & Eastern Ill. R. Co. v. Industrial Commission, 284 U. S. 296; or where an employee was taking down and putting in a new location an overhead counter shaft in a machine shop for

repairing locomotives used in interstate and intrastate transportation: Shanks v. D., L. & W. R. Co., supra; or where plaintiff was removing coal from storage tracks to coal chutes, although the coal was to be used by locomotives in interstate hauls: Chicago, B. & Q. R. Co. v. Harrington, supra; or where plaintiff was wheeling a barrel of coal to heat a repair shop: Ill. Cent. R. Co. v. Cousins, 241 U. S. 641; or where a carpenter was engaged in transporting an outhouse to replace an old one at a depot: Minneapolis & St. L. R. Co. v. Nash, 242 U. S. 619.

The Supreme Court of this State held that one was not engaged in interstate transportation when rearranging and remodeling bins in a stock house used for the storage of material and parts to be employed from time to time in the repair of defendant's tracks, locomotives, and railroad stock, whether engaged in interstate or intrastate commerce: Phillips v. B. & O. R. Co., 287 Pa. 390, 135 A. 102. In a case strikingly similar to the one under consideration, the Supreme Court of Errors of Connecticut held that a railroad station clerk whose duties were to sell tickets, check baggage, care for mail, all of which consisted partly of interstate business, and care for the station generally, when killed by electricity while turning off the station light at the end of the day's work was not engaged in interstate transportation: Sullivan v. N. Y., N. H. & H. R. Co., 105 Conn. 122, 134 A. 795.

Applying the test to the case in hand it is manifest that Gasser was not "employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car or other instrument *then in use in such transportation*": Shanks v. D., L. & W. R. Co., supra, p. 559. (Italics ours.) He was performing ordinary janitor service about an instrumentality not then in actual use in transportation. There has been a manifest tendency in the recent de-

cisions of the United States Supreme Court to exclude from the benefit of the Federal Employers' Liability Act those who are only remotely concerned in interstate commerce and where they were not at the time of the accident actively engaged in work closely related to such transportation so as to be practically a part of it. In a remote sense, facilities for the reception, housing, and delivery of interstate freight, and fuel to be used in connection with such commerce are instrumentalities of interstate commerce, but frequently they are not so closely related thereto as to bring the employees engaged therein under the protection of the Federal Employers' Liability Act rather than a state compensation law. The work which Gasser was doing in this case was not different from scrubbing station floors, washing the station windows, lighting the stove, firing the boiler, or similar janitor service. See Industrial Accident Commission of Cal. v. Davis, 259 U. S. 182.

Judgment of the lower court is affirmed.