## Slizik *v.* The Pittsburgh & Lake Erie Railroad Company, Appellant.

Argued April 19, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and HIRT, JJ.

*P. K. Motheral,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellant.

*Abe R. Cohen,* with him *Benjamin B. Crone,* for appellee.

OPINION BY PARKER, J., June 24, 1940:

The sole defense of the appellant railroad company to the payment of workmen's compensation to the widow of one of its employees is that he was, at the time of the fatal accident, engaged in interstate transportation and therefore within the terms of the Federal Employers' Liability Act: *N. Y. Central R. Co. v. Winfield,* 244 U. S. 147, 37 S. Ct. 546. We are all of the opinion that the federal act is not applicable under the facts shown here. We arrive at that conclusion principally for the reason that the duties of the employee were not so closely related to interstate transportation as to be practically a part of it: *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556, 36 S. Ct. 188, 189.

The claimant's husband was employed as a watchman, or patrolman, about the Central Warehouse and the Freight Station, two adjoining buildings operated by the defendant, and was killed while operating an elevator in the warehouse. This warehouse is a seven-story building used principally for the storage of merchandise, and the other building is the usual type of a one-story freight depot. The tracks of the railroad and the platform for loading and unloading form a continuous unit extending through both buildings. The relation of the warehouse to railroad transportation is illustrated by a concrete example shown by the record. On the day that claimant's decedent was killed there were three cars which had come from another state standing on the tracks in the warehouse and during that day they were unloaded. The three cars were consigned to Central Warehouse, one for a Pittsburgh newspaper publishing company and the other two for General Foods. Merchandise was received and stored until needed or called for by the consignee. It is apparent from the testimony

that when the goods were taken into storage transportation ended, and the defendant then furnished the service of an ordinary storage warehouse. That there were at times movements of freight in interstate transportation in both the freight depot and the warehouse cannot be questioned. It is, however, clear that the principal business conducted at the warehouse was storage and it ceased to be a part of interstate transportation when the goods came to rest in the storehouse.

The duties of the decedent were those of a watchman required to be on the lookout for fire and theft of property. While he had been sworn in as a policeman, he was instructed by his superiors not to make any arrests. His superior officer testified that the decedent "performed watchmen's service." He started work at 5:00 P. M. and spent one hour in the warehouse office "watching the sprinkling system alarm"; then he patrolled the warehouse through its seven stories and the freight depot for an hour. In this movement he punched thirty-five time clocks, noted the condition of freight and the seals on cars. He then returned to the office for another hour and so on to the end of his day's work. Another employee alternated in the same work during the same time, so that there were a man patrolling and a man watching the sprinkling system at all times. At one minute before 9:00 P. M., the employee met with a fatal accident while attempting to operate an elevator from the cellar of the warehouse to the first floor and while on his way to the office where he was to remain for an hour. It is admitted by the defendant that the employee took no part in the actual transportation of freight or passengers for the railroad company. His duties did not require him at any time to go upon the transportation facilities or have any part in their operation.

"It will be observed that the word used in defining the test is 'transportation,' not the word 'commerce'. The two words were not regarded as interchangeable, but as conveying different meanings. Commerce covers the whole field of which transportation is

only a part; and the word of narrower signification was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. It is engaged in the transportation of persons and things in commerce; and hence the test of whether an employee at the time of his injury is engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation, or in work so closely related to such transportation as to be practically a part of it": *Chicago & N. W. Ry. Co. v. Bolle,* 284 U. S. 74, 78, 52 S. Ct. 59.

No formula can be devised which will furnish a ready answer to an inquiry as to how near the relation of the employee to interstate transportation must be in order that it may be said to be a practical part of such transportation. The question is rather a practical one which must be determined after a comparison of the situation inquired about with the facts in cases heretofore decided. As we will see, the United States Supreme Court, our own appellate courts, and courts of other jurisdictions have interpreted fact situations closely resembling those in the instant case and from these we believe we can draw a definite conclusion.

The Federal Employers' Liability Act has been held not to extend to an employee of a railroad engaged in both interstate and intrastate transportation where the employee was employed in a colliery operated by the railroad and was mining coal intended to be used in the company's locomotives moving in interstate commerce: *Delaware, L. & W. R. Co. v. Yurkonis,* 238 U. S. 439, 35 S. Ct. 902; or where an employee was usually engaged in firing a stationary engine to generate steam for heating a depot and baggage room used for general railroad purposes, and the steam was also used to heat passenger coaches standing in the yard, some of these being taken off interstate trains, and for other purposes clearly involving interstate traffic, but at the precise time of the accident he was on a locomotive which was

being used as a substitute for the stationary boiler and he was making a trip with the engine for the purpose of procuring a supply of coal to generate the steam: *Chicago & N. W. Ry. Co. v. Bolle,* supra; or where he was oiling an electric motor used for hoisting coal into a chute then to be used by locomotives moving interstate freight: *Chicago & E. Ill. R. Co. v. I. C.,* 284 U. S. 296, 52 S. Ct. 151; or where he was replacing a shaft in a machine shop for repairing locomotives used in interstate and intrastate transportation: *Shanks v. Delaware, L. & W. R. Co.,* supra; or where he was removing coal from storage to chutes to be used by locomotives in interstate hauls: *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177, 179, 36 S. Ct. 517; or where a carpenter was making repairs and improvements at a depot: *Minneapolis & St. L. R. Co. v. Nash,* 242 U. S. 619, 37 S. Ct. 239; or where he was engaged in reorganizing and remodeling bins in a storehouse used for storage of parts for locomotives, trucks, etc., used in both classes of transportation: *Phillips v. B. & O. R. Co.,* 287 Pa. 390, 135 A. 102.

The Supreme Court of Errors of Connecticut held that a railroad station clerk whose duties were to sell tickets, check baggage, care for mail, all of which consisted partly of interstate business, and care for the station generally, when killed by electricity while turning off the station light at the end of the day's work was not engaged in interstate transportation: *Sullivan v. N. Y., N. H. & H. R. Co.,* 105 Conn. 122, 134 A. 795.

The case of *Gasser v. Central R. R. of N. J.,* 112 Pa. Superior Ct. 420, 171 A. 97, (allocatur refused by our own Supreme Court and certiorari denied by United States Supreme Court, 293 U. S. 565, 55 S. Ct. 75) presents a close parallel to the facts in this case. Gasser's employment consisted of "general oversight of the station, the handling of interstate and intrastate shipments, the selling of tickets, acting as telegrapher, the recording of passing trains and janitor service in and about the depot and platform." While sweeping

the platform he was struck by a passing train. On that same day he had handled several items in interstate transportation and he regularly performed services in both classes of transportation. We there said (p. 425) : "Applying the test to the case in hand it is manifest that Gasser was not 'employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car or other instrument then in use in such transportation': *Shanks v. D., L. & W. R. Co.,* supra, p. 559. He was performing ordinary janitor service about an instrumentality not then in actual use in transportation. There has been a manifest tendency in the recent decisions of the United States Supreme Court to exclude from the benefit of the Federal Employers' Liability Act those who are only remotely concerned in interstate commerce and where they were not at the time of the accident actively engaged in work closely related to such transportation so as to be practically a part of it. In a remote sense, facilities for the reception, housing, and delivery of interstate freight, and fuel to be used in connection with such commerce are instrumentalities of interstate commerce, but frequently they are not so closely related thereto as to bring the employees engaged therein under the protection of the Federal Employers' Liability Act rather than a state compensation law."

In the recent case of *Painter v. B. & O. R. Co.,* —— Pa. ——, 13 A. 2d 396, plaintiff was employed in performing repair work at a passenger station where the usual interstate and intrastate transportation was carried on. When injured he was engaged in filling, trimming, and cleaning lanterns. Mr. Justice BARNES, in holding that the federal act was not applicable, said: "His immediate employment was not 'in interstate transportation, or in work so closely related to it as to be practically a part of it' in accordance with the rule established by the Supreme Court of the United States. What he was doing did not impede or facilitate the movement of interstate trains.

The facts clearly show that the relation of his work to interstate transportation was too remote to afford a basis for recovery under the Federal Act."

The decisions of the United States Supreme Court also establish the rule that the status of the employee with respect to interstate transportation is to be tested by the work that he is actually performing at the time of the accident, unless such work is not separable *(Philadelphia & R. Ry. Co. v. Di Donato,* 256 U. S. 327, 329, 41 S. Ct. 516; *Elder v. Penna. R. R. Co.,* 118 Pa. Superior Ct. 137, 143, 180 A. 183), and not by the service rendered by him in general: *Illinois C. R. Co. v. Behrens,* 233 U. S. 473, 34 S. Ct. 646. The employee in this case was injured while performing service in that part of the warehouse which was not devoted to interstate transportation but to storage.

We are all of the opinion that the work performed by claimant's decedent as a watchman or patrolman was of the same general nature as that of a janitor. He took no part in the actual transportation of persons or goods. His employment only affected interstate transportation remotely and for practical purposes it was not a part of it.

Judgment affirmed.