Scarborough *v.* Pennsylvania Railroad Company, Appellant.

Argued November 15, 1943.    Before KELLER, P. J., BALDRIGE, STADTFELD, HIRT, KENWORTHEY and RENO, JJ.    (RHODES, J., absent).

130

*Adelbert S. Schroeder,* with him *J. Hibbs Buckman,* for appellant.

*I. Louis Rubin,* for appellee.

OPINION BY BALDRIGE, J., January 27, 1944:

Ernest E. Scarborough, claimant in a workmen's compensation case, on April 21, 1941, suffered the loss of the vision of his right eye due to some foreign matter getting into it when he was working on a light fixture in the platform roof of the westbound side of defendant's Bryn Mawr Pennsylvania station.

As there is no dispute of facts the question presented before us is one entirely of law as to whether the claimant was engaged in interstate or intrastate commerce: *Mason v. Reading Co.,* 129 Pa. Superior Ct. 289, 291, 195 A. 754. Even if the facts were in dispute the character of the employment, whether interstate or intrastate, is a question of law. We are not bound, therefore, by the conclusions of the compensation authorities: *Niblett v. Pa. Railroad Co.,* 146 Pa. Superior Ct. 587, 590, 23 A. 2d 62, allocatur refused 147 Pa. Superior Ct. XXIII; *Nicholas v. Reading Co.,* 147 Pa. Superior Ct. 308, 24 A. 2d 63.

If the claimant was engaged in intrastate commerce and subject to the provisions of the Act of June 2, 1915, P. L. 736, as amended, 77 PS §1, he was entitled

to an award. On the other hand, if he was engaged in interstate commerce, as defined by the 1939 amendment to the Federal Employer's Liability Act of August 11, 1939, c. 685, §1, 53 Stat. 1404, 45 U. S. C. A. §51, then he is not entitled to compensation in this proceeding. A determination of the kind of commerce an employe was engaged in when injured has been a fruitful source of litigation.

The regular and general employment of this claimant with the defendant is that of a signalman. His duties include the construction and repair of switches, signal and tower equipment on the main line of the Pennsylvania Railroad, running between Philadelphia and many points outside the state, and he is subject to call at any hour of the day. On the day of the accident, and for approximately three weeks prior thereto, he had been employed continuously in installing new station lights on the westbound platform roof at the Bryn Mawr station. The current used in lighting this system was furnished by the Philadelphia Electric Company, an independent concern. No interstate trains stop at the Bryn Mawr station except three times a year to accommodate students attending the college. Many interstate passengers entrain here, changing to a through, or interstate, train at Philadelphia or Paoli, a few miles distant, and interstate baggage is handled at the station.

The referee held that the claimant was not in interstate commerce at the time of his injury, and made an award which was affirmed by the board and upheld by the court of common pleas.

The claimant's general duties and employment as a signalman working on track and equipment carrying both interstate and intrastate trains was interstate even before the amendment of 1939: *Mahon, Exrx. v. Lack. & W. V. R. Co.*, 131 Pa. Superior Ct. 44, 198 A. 681. Prior to the 1939 amendment the test to be applied

was whether the employe at the time of the injury was engaged in interstate transportation or in work so closely related to it as to be practically part of it: *Shanks v. D. L. & W. R. Co.*, 239 U. S. 556, 558, 36 S. Ct. 188, 60 L. Ed. 436; *Gasser v. Cent. R. R. of N. Y.*, 112 Pa. Superior Ct. 420, 171 A. 97; *Slizik v. P. & L. E. R. R. Co.*, 140 Pa. Superior Ct. 283, 13 A. 2d 911; *Sullivan v. New York, N. H. & H. R. Co.*, Conn., 134 A. 795. Under the foregoing authorities it is doubtful whether the claimant would have come under the Federal Employer's Liability Act prior to the 1939 amendment.

We come now to consider the 1939 amendment. It reads as follows: "Any employee of a carrier, *any part of whose duties* as such employee shall be the furtherance of interstate or foreign commerce; or shall, *in any way directly or closely and substantially*, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (Italics supplied.) This language is very comprehensive, so inclusive indeed that most railroad employes come within its scope.

No United States Supreme Court case has been cited, and we have found none directly interpreting this 1939 amendment. In two recent cases however, involving the Fair Labor Standards Act, that court has referred to the undesirable confusion which characterized the application of the Federal Employer's Liability Act and prompted the 1939 amendment. *McLeod v. Threlkeld et al.*, 319 U. S. 491, 63 S. Ct. 1248, 87 L. Ed. 1154; *Overstreet et al. v. North Shore Corporation*, 318 U. S. 125, 63 S. Ct. 494, 87 L. Ed. 423.

We recognize that the legislative history and intent of the framers of an act, as shown by committee reports, is not controlling, but it is a legitimate aid. As stated

in *Com. v. W. Phila. Fidelio Mannerchor,* 115 Pa. Superior Ct. 241, 246, 247, 175 A. 434, in interpreting an act where its meaning is doubtful or obscure, "in order to get at the old law, the mischief, and the remedy" the history may always be considered. See, also, *Railroad Commission v. C. B. & Q. R. R. Co.,* 257 U. S. 563, 589, 42 S. Ct. 232, 237, 66 L. Ed. 371, 22 A. L. R. 1086. The report of the Judiciary Committee of the United States Senate, 76th Congress, 1st Session (Committee Report No. 661 upon S. 1708) reads in part as follows: "This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations ...... The adoption of the proposed amendment will, to a very large extent, eliminate the necessity of determining whether an employee, at the very instant of his injury or death, was actually engaged in the movement of interstate traffic. If any part of the employee's duties (at the time of his injury or death) directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefits of the act. The preponderance of service performed by railroad employees is in interstate commerce. As to those who are constantly shifting from one class of service to another, the adoption of the amendment will provide uniform treatment in the event of injury or death while so employed."

Cases in other jurisdictions, state and federal, decided under the 1939 amendment, have shown a tendency to construe the amendment liberally so as to end prior confusion and give the employe the benefit of the Federal Act. Such cases include the following: *Ermin v. Pennsylvania R. Co.,* 36 Fed. Supp. 936 (brakeman moving dead engines to a repair shop, for part of month

preceding had been a brakeman in interstate commerce, held interstate) ; *Piggue v. Baldwin et al.,* Kan., 121 P. 2d 183 (workman picking up papers, removing cinders, etc., on track over which passed cars in interstate traffic, held within 1939 amendment) ; *Wright v. New York Cent. R. Co.,* 33 N. Y. S. 2d 531, affirmed by Court of Appeals, 43 N. E. 2d 97, cert. den., 63 S. Ct. 73 (boilermaker engaged in intrastate work five days a week, acted as substitute inspector on the sixth day and worked on engines used in interstate commerce, at the time of the injury he was repairing an engine which had been engaged in interstate traffic, held in a majority opinion that he was within the federal act.) The learned judge below reached the same conclusion as Justice HEFFERNAN in his dissenting opinion in that case; *Prader v. Pennsylvania R. Co., Ind.,* 49 N. E. 2d 387, (track repairer, ordinarily in interstate work, injured in intrastate while driving in an auto to a nearby village, held within the 1939 Act) ; *Southern Pacific Co. v. Industrial Accident Commission et al.,* Cal., 120 P. 2d 880, (repairing maintenance car in shops, the car being used on interstate tracks, held interstate commerce as directly, closely, and substantially affecting such commerce) ; *Lewis v. Industrial Accident Commission,* Cal., 120 P. 2d 886, (member of switching crew which handled no interstate cars until after the injury; thereafter cars intended for interstate commerce were switched by the crew. His duties affected interstate commerce directly, closely, and substantially.)

Taking into consideration that Scarborough's general duties were in interstate commerce, and that he was subject to call at all times for such service, notwithstanding he had been working three weeks repairing the Bryn Mawr station lighting system he continued to be employed as a signalman. He was never changed or transferred from that branch of defendant's service. He was subject to call to do temporary work, such as

he was doing when injured, but the fact remains that he was always available to perform his general duties, which were in the furtherance of interstate commerce. Our conclusion is that the amendment stating "any part of whose duties shall be in furtherance of interstate commerce" was intended to cover the present situation.

Furthermore, we are of the opinion that the work claimant was doing at the moment of his injury "directly, closely, and substantially" affected the movement of interstate traffic. It is not necessary under the 1939 amendment that an employe to receive the benefits of the Federal Act be engaged at the time of his injury "in transportation so closely related to it as to be practically part of it" as stated in *Shanks v. D. L. & W. R. Co.*, supra.

It can hardly be said that the adequate lighting of the station is not closely and substantially related to, and does not affect the movement of, interstate transportation. Proper lighting certainly facilitates the handling of baggage and promotes the safety of persons using the trains and may very reasonably be regarded as a contributing factor to the movement of interstate traffic. True, the lighting fixtures of a station are not instrumentalities that participate directly in the actual movement of transportation, a test applied prior to the 1939 amendment: *Sullivan v. New York N. H. & H. R. Co.*, supra. Nevertheless, from a practical standpoint they may be regarded as essential accessories to interstate passenger travel so that an employe making repairs thereto comes within the broadening language of the present statute reading "any part of whose duties as such employee ...... in any way directly or closely and substantially, affect such commerce ......"

In *Overstreet et al. v. North Shore Corporation*, supra, where the one employe was engaged in maintenance and repair work on a toll bridge, and another collected tickets from persons using the bridge, it was

held that they were "engaged in commerce" as used in the Fair Labor Standards Act. The court there stated, p. 499: "Petitioners, who are engaged in operating and maintaining respondent's facilities so that there may be interstate passage of persons and goods over them, are so closely related to that interstate movement as a practical matter that we think they must be regarded, under the allegations of their complaint, as 'engaged in commerce' within the meaning of the act."

If the floor of this station had been defective, in a condition that retarded the handling of baggage or interfered with, or endangered, passengers getting on or off trains and an employe was injured when making repairs, we think the employe would come within the 1939 amendment and the same principle applies to one repairing the lighting system.

A careful consideration of this case leads us to the conclusion that the claimant's remedy, if any, was under the Federal Employer's Liability Act.

The judgment of the court below is reversed and is now entered for appellant.